UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| Nasdaq, Inc., <br><br>       Plaintiff, <br><br> v. <br><br> ███████████, <br><br>       Defendant. | Case No.: |

**COMPLAINT (PUBLIC REDACTED VERSION)**

Plaintiff Nasdaq, Inc. ("Nasdaq") for its Complaint against ███████████ ("███████" or "Defendant"), states as follows:

## NATURE OF THE ACTION

1. This is an action for trade secret misappropriation in violation of the Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq*) and the Illinois Uniform Trade Secrets Act (765 ILCS 1065/1 *et seq*), violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq*), violation of the Digital Millennium Copyright Act (17 U.S.C. § 1203), and tortious interference with prospective economic advantage, all stemming from Defendant's unauthorized theft of and publication of Nasdaq's real-time data feeds. Defendant's continued theft of Nasdaq's data feeds has caused and continues to cause irreparable harm for which Nasdaq seeks injunctive relief as well as actual damages, disgorgement of profits, and punitive damages.

## PARTIES

2. Plaintiff Nasdaq, Inc. is a corporation organized under the laws of Delaware with its principal place of business at 151 W. 42nd Street, New York, New York 10036.

3. On information and belief, Defendant is a private limited company organized

under the laws of Singapore with its principal place of business at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Singapore, ▮▮▮▮▮.

4.    On information and belief, the three directors of Defendant are ▮▮▮▮▮▮▮▮, a citizen of ▮▮▮▮; ▮▮▮▮▮▮▮▮▮▮, a citizen of ▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, a citizen of ▮▮▮▮▮▮.

## JURISDICTION AND VENUE

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3), as Defendant is not resident in the United States and may therefore be sued in any judicial district.

6.    This Court may properly exercise personal jurisdiction over Defendant because it directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet website at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Specifically, Defendant is reaching out to do business with Illinois residents in this judicial district by operating the commercial, interactive Internet web site through which Illinois residents can purchase services including access to the misappropriated Nasdaq data feeds taken without authorization. Defendant has targeted sales from Illinois residents by operating its online website that offers access to the United States, including Illinois, accepts payment in U.S. dollars and, on information and belief, has sold data feeds including the misappropriated Nasdaq data feeds to residents of Illinois. Defendant is committing tortious acts in Illinois, engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

7.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq*), the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq*), the Digital Millennium Copyright Act (17 U.S.C. § 1203), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because

the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## THE PLAINTIFF

8. Nasdaq is a multinational financial services corporation that operates equity and options exchanges and indices. Nasdaq divides its products and services in three business segments: Capital Access Platforms, Financial Technology, and Market Services. Within the Capital Access Platforms segment is Nasdaq's Data & Listing Services business.

9. As part of that Data & Listing Services business, Nasdaq sells and distributes historical, delayed and real-time market data to investors. Nasdaq offers different licensing arrangements to investors based on the type of data they would like access to and their intended use of that data, including for the purposes of distributing the data to others.

10. Nasdaq's Data & Listing Services business offers products that provide information about the market to professional and non-professional investors globally. These data products include, among others, the "Global Index Data Service," "Nasdaq Basic," and "Nasdaq Last Sale."

11. Nasdaq's Data & Listing Services business collects, processes, publishes, and distributes precise information about financial markets, which is of particular value to investors. Nasdaq generates revenue from licensing data products containing this information ("Nasdaq Data"), along with some select third-party data, to Nasdaq's Data & Listing Services business s clients.

12. Nasdaq's data products are compilations of financial information that Nasdaq takes great care to ensure is only available to its customer licensees, which derive independent economic value from not being generally known to and not being readily ascertainable through proper means by those who are not customer licensees of Nasdaq.

13. Nasdaq's real-time market data derives significant value from being available in real-time, typically every second, with the latest bids, asks, price, and volume of transactions occurring on Nasdaq's markets ("Real-Time Nasdaq Data"). Real-Time Nasdaq Data is not accessible on the same timescales other than through Nasdaq's data products.

14. Nasdaq requires all customers of its data feeds to sign its Global Data Agreement ("GDA") (attached hereto as Exhibit 1).

15. Paragraph 4(b) of the GDA prohibits customers (referred to in the GDA as "Distributor") from retransmitting or reprocessing any information obtained through the data feeds without Nasdaq's express approval.

16. Paragraph 4(h) of the GDA requires Distributors to take security precautions to prevent unauthorized access to the data feeds, and requires them to notify Nasdaq in the event of any breach of security:

> Distributor shall take reasonable security precautions to prevent unauthorized individuals or entities from gaining access to the information. Distributor shall comply with all reasonable security specifications or requirements of Nasdaq in order to prevent the information from being improperly used or accessed or from being improperly taken. Distributor shall notify Nasdaq promptly upon any breach in security procedures related to the information of which it becomes aware.

17. The GDA requires Distributors to follow the US Equities and Options Data Policies ("Data Policies") (attached hereto as Exhibit 2), which add specific requirements and contractual limitations on how Distributors may access Nasdaq Data.

18. As the institutional author of its data feeds, exercising creative control over how the data feeds are organized, generated, and formatted, Nasdaq owns a valid copyright in all its published data feeds.

19. The GDA explains that Nasdaq has proprietary rights and intellectual property rights in its data feeds, and retains all ownership of those intellectual property rights (including

4

copyright ownership):

> Distributor acknowledges and agrees that, as between the two parties, subject to Section 4(j) below, Nasdaq has proprietary rights in the Information and data that (i) originates on or relates to trading on any of the Nasdaq Markets; (ii) relates to activities that are regulated or operated by one or more of the Nasdaq Markets, (iii) Nasdaq derives from Information and data that originates on or relates to any Nasdaq Market, and (iv) compilation or other rights in information and data that Nasdaq gathers from other sources pursuant to separate agreements with those sources. Subject to Section 4(j) below, all Information, including without limitation any and all intellectual property rights inherent therein or appurtenant thereto, shall, as between the two parties, be and remain the sole and exclusive property of Nasdaq. Distributor shall not, by act or omission, diminish or impair in any manner the acquisition, maintenance, and full enjoyment by Nasdaq, its licensees, transferees and assignees, of the proprietary rights of Nasdaq in the Information and System. Distributor acknowledges and agrees that Third Party Information Providers have exclusive proprietary rights in their respective information and data and services.

20. The GDA requires that all Distributors of Nasdaq Data follow display formatting described in the Nasdaq Requirements, and may not remove or alter any notice of intellectual property ownership:

> Distributor shall be entitled to change the display format identified by Distributor in accordance with the Nasdaq Requirements; provided that: for a material change (i) Distributor shall notify Nasdaq, describing such change in reasonable detail, as soon as reasonably practicable or within fifteen (15) days after implementation of any such change; and (ii) Distributor believes in good faith that such change complies with the Nasdaq Requirements. Distributor shall not be required to notify Nasdaq of non-material changes. Distributor will attribute source as set forth in the Nasdaq Requirements. Distributor shall not remove or alter any intellectual property ownership and/or identification notices found within the Information except with Nasdaq's prior written approval.

21. The Nasdaq Requirements (attached hereto as Exhibit 3) require all Distributors providing Nasdaq Data to include prominent attribution messages identifying Nasdaq as the owner of the data being provided, such as "Real Time Nasdaq Last Sale data provided by Nasdaq" or "Source: Nasdaq Last Sale."

## THE DEFENDANT

22. Defendant is a company incorporated in ▇▇▇▇▇▇ that provides access to real-

5

time financial data through its website, ███████████.

23. Defendant's website claims: "█████████████████████████████████████████████████████████████████████████████████████████████████████████████."

24. Defendant's website states that it supports stock market data from all major US-based exchanges and their subsidiaries. On information and belief, that includes stock market data from Nasdaq.

## DEFENDANT'S MISAPPROPRIATION OF NASDAQ DATA

25. On information and belief, Defendant is offering financial information in real-time or with short delays that contains identical information to Real-Time Nasdaq Data.

26. Several customers of Nasdaq's data feeds have communicated with Nasdaq that they had purchased Nasdaq Data from Defendant instead of from Nasdaq or Nasdaq's authorized Distributors because Defendant's price was significantly lower.

27. Nasdaq also has received communications from Distributors authorized to redistribute Nasdaq Data that they have lost numerous customers to Defendant because Defendant provides Nasdaq Data for a significantly lower price than Nasdaq's authorized Distributors.

28. Defendant has not signed any agreement with Nasdaq authorizing it to distribute Nasdaq Data.

29. Defendant has not signed any agreement with Nasdaq authorizing it to receive Nasdaq Data.

30. On information and belief, Defendant makes available to its customers Nasdaq Data that it obtained without Nasdaq's authorization.

31. In 2023, Nasdaq reached out to a co-founder of a financial company who had

obtained Nasdaq Data from Defendant. That co-founder shared with Nasdaq an email exchange between himself and an "███████████" at Defendant. The co-founder asked Mr. ███████ if Defendant had a license to redistribute Real-Time Nasdaq Data. In response, Mr. ███████ responded: "████████████████████████████████████████████████████████████████████████████████████████████."

32. On information and belief, there is no person named "███████████." Nasdaq has found no evidence of the existence of a person with that name employed by Defendant with any Internet presence.

33. Defendant's email to the co-founder was false at least as to Nasdaq's Data; there are no authorized Distributors of Nasdaq Data who are authorized to grant Defendant the right to further redistribute Nasdaq's data feeds.

34. On information and belief, Defendant makes available to its customers real-time data feeds for Nasdaq stock trades that are unauthorized copies of Real-Time Nasdaq Data feeds.

35. In April and May of 2024, Nasdaq attempted again to reach out to "Mr. ███████" to determine if Defendant had an authorized source for its Real-Time Nasdaq Data. ███████ responded to Nasdaq's emails claiming that he was unaware of Defendant providing Real-Time Nasdaq Data, and that Defendant provided Nasdaq's, "EOD" (end-of-day) index information, without identifying Defendant's real-time data source. Upon information and belief, Defendant also does not have a license to receive or distribute Nasdaq's EOD index information.

## COUNT I

### (MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836)

36. Nasdaq repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

37. The Real-Time Nasdaq Data are trade secrets which Nasdaq has taken reasonable

7

measures to keep secret and from which Nasdaq derives independent value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information.

38. As detailed above, the Real-Time Nasdaq Data are compilations of financial information that cannot be generated from data distributed by authorized Distributors of Nasdaq data feeds at the speed necessary for investors to make use of it in real-time. Investors with access to Real-Time Nasdaq Data feeds have differing investment and trading objectives over investors without such access and, as such, pay substantial sums for those data products in order to receive the real-time data as soon as possible after it comes into existence. The Real-Time Nasdaq Data therefore derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

39. As detailed above, Nasdaq has taken reasonable measures to keep its Nasdaq data feeds secret from unauthorized users by, *e.g.*, implementing its own internal security measures to prevent unauthorized access to its computers, requiring all authorized Distributors of Nasdaq data feeds to exercise reasonable security measures, prohibiting all unauthorized distribution of Nasdaq Data, and requiring all authorized Distributors of Nasdaq data feeds to notify Nasdaq of any security breach.

40. Defendant has misappropriated the Nasdaq data feeds in one or more of the following ways:

    a. By acquiring the Nasdaq data feeds through improper means (*e.g.*, misrepresentations, breach or inducement of a breach of duty to maintain secrecy, and/or obtaining unauthorized access to computers to obtain the Nasdaq data

8

feeds);

b. By disclosing and/or using the Nasdaq data feeds without Nasdaq's consent;

c. By disclosing and/or using the Nasdaq data feeds without Nasdaq's consent for its own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Nasdaq data feeds were acquired through improper means;

d. By disclosing and/or using the Nasdaq data feeds without Nasdaq's consent for its own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Nasdaq data feeds were acquired under circumstances giving rise to a duty to maintain the secrecy and limit the use of those trade secrets; and

e. By disclosing and/or using the Nasdaq data feeds without Nasdaq's consent for its own commercial benefit while knowing, or having reason to know, at the time of the disclosure and/or use, that the Nasdaq data feeds were derived from or through a person who owed a duty to Nasdaq to maintain the secrecy and limit the use of those trade secrets.

41. Defendant took such actions willfully, maliciously, and/or in reckless disregard for Nasdaq's rights, in that Defendant knew, or had reason to know, that Defendant was not authorized to use the Nasdaq data feeds in competition with Nasdaq or for Defendant's own commercial benefit.

42. As a result of Defendant's misappropriation of the Nasdaq data feeds, Nasdaq has suffered and will continue to suffer actual damages, and/or Defendant has been unjustly enriched, in an amount to be determined at trial.

43. As a result of Defendant's misappropriation of the Nasdaq data feeds, Nasdaq has suffered and will continue to suffer irreparable harm if Defendant's misconduct is not enjoined.

44. Pursuant to 18 U.S.C. § 1836(b)(3)(C), Nasdaq is entitled to exemplary damages for Defendant's willful and malicious misappropriation of the Nasdaq data feeds.

45. Pursuant to 18 U.S.C. § 1836(b)(3)(D), Nasdaq is entitled to recovery of its attorneys' fees because of Defendant's willful and malicious misappropriation of the Nasdaq data feeds.

## COUNT II

### (MISAPPROPRIATION OF TRADE SECRETS UNDER THE ILLINOIS TRADE SECRETS ACT)

46. Nasdaq repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

47. The Nasdaq data feeds, described in detail in the preceding paragraphs of the Complaint, are statutory "trade secrets" protected by the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

48. At all times, Nasdaq has taken reasonable measures to protect the secrecy of the Nasdaq data feeds, and Nasdaq derives economic value and competitive advantage from the Nasdaq data feeds not being generally known to the public or trade.

49. Defendant has misappropriated and continues to misappropriate the Nasdaq data feed trade secrets by acquiring, disclosing, and/or using, by improper means, the Nasdaq data feed trade secrets for its own benefit and/or the benefit of others without Nasdaq's authorization and consent.

50. Nasdaq has sustained and will continue to sustain damages, and Defendant has been and will continue to be unjustly enriched in an amount to be proven at trial, as a direct

result of Defendant's misappropriation of the Nasdaq data feed trade secrets.

51. Defendant's past and continued misappropriation of the Nasdaq data feed trade secrets has been willful and malicious and entitles Nasdaq to exemplary damages and an award of attorneys' fees and costs pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

52. Nasdaq also is entitled to injunctive relief to prevent the continued misappropriation of the Nasdaq data feed trade secrets by Defendant pursuant to the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*.

## COUNT III

### (VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT)

53. Nasdaq repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

54. On information and belief, Defendant obtained and continues to obtain the Nasdaq data feeds through accessing secured computers belonging to Nasdaq or authorized Nasdaq Distributors without authorization or exceeding authorization.

55. All computers possessed by either Nasdaq or Nasdaq-authorized Distributors from which the Nasdaq data feeds may be accessed, including but not limited to all servers, desktop computer, laptop computers, and networked hard drives, were at all relevant times used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e). The Nasdaq data feeds are stored on, and may be accessed from, one or more of these protected computers owned by Nasdaq or Nasdaq-authorized Distributors, access to which is strictly controlled via various security measures, including secret passwords, and all are used in or affect interstate or foreign communications or commerce.

56. On information and belief, Defendant intentionally accessed and continues to access the secure, protected computers of Nasdaq or Nasdaq-authorized Distributors without

authorization or exceeding their authorization, and thereby obtained information from those protected computers, in violation of 18 U.S.C. § 1030(a)(2)(C).

57. On information and belief, Defendant knowingly and with the intent to defraud, accessed the secure, protected computers of Nasdaq or Nasdaq-authorized Distributors, or caused others to access the secure, protected computers of Nasdaq or Nasdaq-authorized Distributors, without authorization or in excess of their authorized access and in furtherance of the intended fraud obtained the valuable Nasdaq data feeds and/or other valuable information or the valuable use of the secure Nasdaq network and computers, which has a value exceeding five thousand dollars ($5,000.00) in a one-year period, in violation of 18 U.S.C. § 1030(a)(4).

58. Defendant, through its actions in violation of 18 U.S.C. §§ 1030(a)(2) and (a)(4), has caused Nasdaq to incur losses in responding to and investigation of Defendant's misconduct, including damage and security assessments, exceeding five thousand dollars ($5,000.00) during a one-year period in violation of 18 U.S.C. § 1030(g) and (c)(4)(A)(i)(I); the investigation of such losses continues.

59. In addition to an award of compensatory damages, Nasdaq also is entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g), restraining and enjoining Defendant and all those in privity, concert or participation with Defendant from engaging in such wrongful acts in violation of 18 U.S.C. § 1030(a)(2) and (a)(4).

## COUNT IV
### (VIOLATION OF 17 U.S.C. § 1202)

60. Nasdaq repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

61. The prominent attribution messages required to be included on all displays by the Nasdaq Requirements and GDA are information that is conveyed in connection with all copies of

12

Nasdaq Data through its data feeds identifying the name of the owner of the copyright in the Nasdaq data feeds, and therefore constitute "copyright management information" ("CMI") under 17 U.S.C. § 1202(c).

62. When Defendant republished and continues to republish its unauthorized copies of the Nasdaq data feeds, it removes the attribution messages that Nasdaq requires to be affixed to its data feeds as CMI.

63. On information and belief, Defendant has violated 17 U.S.C. § 1202(b) in one or more of the following ways:

    a. By intentionally removing the Nasdaq CMI from the data feeds, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal the infringement of Nasdaq's copyright in the data feeds;

    b. By intentionally distributing the unauthorized copies of altered or removed versions of the Nasdaq CMI and the Nasdaq data feeds knowing that the Nasdaq CMI has been removed or altered without authority of Nasdaq or the law, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal the infringement of Nasdaq's copyright in the data feeds; and

    c. By distributing copies of the Nasdaq data feeds knowing that Nasdaq CMI has been removed or altered without authority of Nasdaq or the law, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal the infringement of Nasdaq's copyright in the data feeds.

64. Each removal of Nasdaq's CMI from a copy of the Nasdaq data feeds by Defendant was, and continues to be, a violation of 17 U.S.C. § 1202(b)(1).

65. Each distribution of a copy of Nasdaq's data feeds by Defendant that had or

continues have Nasdaq's CMI removed was and is a violation of 17 U.S.C. § 1202(b)(3).

66. Defendant is contributorily liable for any violation of 17 U.S.C. § 1202 described above that were committed by third parties at any of their request or direction.

67. Defendant is vicariously liable for any violation of 17 U.S.C. § 1202 described above that was committed by third parties at any of their request or direction.

68. Pursuant to 17 U.S.C. § 1203(c)(3)(B), Nasdaq is entitled to recover statutory damages of between $2,500 and $25,000 from Defendant for each violation of 17 U.S.C. § 1202.

69. Nasdaq is entitled to recover pre- and post-judgment interest, injunctive relief, costs of court, and reasonable attorney's fees from Defendant.

## COUNT V
## (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

70. Nasdaq repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

71. Nasdaq has an economic relationship between Nasdaq and the Distributors and customers of its data feeds.

72. Defendant was aware of the economic relationship alleged herein.

73. Defendant intentionally and maliciously intended to disrupt the relationship between Nasdaq and the authorized Distributors and customers of the Nasdaq data feeds.

74. Defendant did actually disrupt the relationship between Nasdaq and its authorized Distributors and customers by their actions, including misappropriating the Nasdaq data feeds without authorization, republishing them without authorization at a lower price than Nasdaq, and falsely informing its customers that it had obtained authorization to republish the Nasdaq data feeds.

75. Defendant has been unjustly enriched, and unless enjoined will continue to be

unjustly enriched, by its tortious interferences with Nasdaq's legitimate business expectations.

76. Defendant's actions have been willful and malicious.

77. Nasdaq has been injured, irreparably and otherwise, and is threatened with additional and ongoing injuries as a result of Defendant's tortious actions as alleged herein.

78. Nasdaq will or has suffered damages as a result of these actions in an amount to be determined at trial, and because its remedy at law is inadequate, seeks injunctive relief to recover and protect its information, its goodwill and other legitimate business interests.

79. Nasdaq also seeks to recover from Defendant any gains, profits and advantages obtained as a result of the wrongful acts alleged herein in an amount to be determined, and exemplary damages and attorneys' fees.

## COUNT VI
### (VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT, 815 ILCS 510/1 *et seq.*)

80. Nasdaq repeats and realleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

81. Defendant has engaged in acts of violating Illinois law including, but not limited to, passing off its data feeds as authorized by Nasdaq, causing a likelihood of confusion and/or misunderstanding as to the source of their services, causing a likelihood of confusion and/or misunderstanding as to affiliation, connection, or association with Nasdaq, and engaging in other conduct with creates a likelihood of confusion or misunderstanding among the public.

82. The foregoing Defendant's acts constitute a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 501/1 *et seq.*

83. Nasdaq has no adequate remedy at law, and Defendant's conduct has caused Nasdaq to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Nasdaq

will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Nasdaq requests that Judgment be entered in favor of Nasdaq and against Defendant, and that Nasdaq be granted the following relief:

(i) Monetary damages in an amount to be proven by trial;

(ii) An order providing for the seizure of Defendant's property necessary to prevent to the propagation or dissemination of unauthorized copies of the Nasdaq data feeds under 18 U.S.C. § 1836(b)(2);

(iii) Both preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1836(b)(3), 765 ILCS 1065/3, 18 U.S.C. § 1030(g), 17 U.S.C. § 1203(b)(1), and Illinois common law prohibiting Defendant from republishing Nasdaq's data feeds;

(iv) Statutory damages for Defendant's violations of 17 U.S.C. § 1202 as permitted by 17 U.S.C. § 1203(c)(3)(B);

(v) Disgorgement of Defendant's unlawfully obtained profits from its misappropriation of the Nasdaq data feeds;

(vi) Exemplary damages as permitted by all applicable statutes and common law;

(vii) An award of attorneys' fees as permitted by all applicable statutes and common law; and

(viii) Such further relief as this Court may deem just and proper, in law or equity.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Nasdaq respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

Date: August 15, 2024　　　　　　　　　Plaintiff

　　　　　　　　　　　　　　　　　By: /s/ *Brian J. Beck*
　　　　　　　　　　　　　　　　　　　　One of its attorneys

　　　　　　　　　　　　　　　　　Brian J. Beck, (ARDC No. 6310979)

　　　　　　　　　　　　　　　　　HALEY GUILIANO LLP
　　　　　　　　　　　　　　　　　75 Broad Street, Suite 1000
　　　　　　　　　　　　　　　　　New York, NY 10004
　　　　　　　　　　　　　　　　　+1 (669) 213-1058
　　　　　　　　　　　　　　　　　+1 (669) 500-7375 (fax)
　　　　　　　　　　　　　　　　　brian.beck@hglaw.com