# Exhibit 1

# Global Data Agreement

## Introduction and Instructions:

This document is for an applicant intending to receive a data feed containing quotation and/or trade information or other data from Nasdaq, Inc. and its subsidiaries and affiliates (collectively "**Nasdaq**"). This introduction page is intended solely for informational purposes and should not be considered as an agreement or an amendment to any agreement with Nasdaq.

The Information (as that term is defined herein) can be received directly from Nasdaq, through an approved Nasdaq extranet or through an authorized data feed provider or Redistributor. An applicant who intends to receive Information directly from Nasdaq may also be required to procure the necessary communications lines via an approved Nasdaq extranet or other provider. Applicants must follow the procedures outlined in the applicable **Nasdaq Data Policies** accessible via the Nasdaq Trader website (**http://nasdaqtrader.com/Trader.aspx?id=GDP_Ops**).

In the United States, Nasdaq may maintain a registration with the Securities and Exchange Commission ("**SEC**") as a registered securities information processor pursuant to Section 11A of the Securities Exchange Act of 1934 (the "**Exchange Act**"). Outside the U.S., Nasdaq may likewise be subject to regulatory obligations of a Financial Services Authority ("**FSA**") in Sweden, the United Kingdom or elsewhere. As such, Nasdaq is obligated to offer terms that are not unreasonably discriminatory between applicants, Distributors and Recipients, subject to such orders, rules or regulations as the SEC or an applicable FSA may adopt. For Information disseminated from Nasdaq Markets in the United States, Nasdaq will not make any changes to the Agreement that are inconsistent with Section 6(b) of the Exchange Act and undertaking #5 in **www.sec.gov/litigation/admin/3437538.txt**. For Information disseminated from European data centers, Nasdaq will similarly adhere to all statutory and regulatory obligations.

In order to receive data feeds, the applicant must complete the following:

**1). Nasdaq Global Data Agreement - Summary ("GDA Summary"):**

The Nasdaq GDA Summary references the following documents, and Distributors are required to adhere to the terms of these documents per the GDA Summary:

- Nasdaq Global Data Agreement —Summary
- Nasdaq Global Data Agreement — Terms and Conditions
- Nasdaq Global Data Price List
- Nasdaq Requirements

**2). Nasdaq Global Data Agreement Execution.**

Applicants interested in receiving information services must execute **one (1) copy** of the Nasdaq Global Data Agreement accessible on the Nasdaq Trader website. Execution entails having an authorized officer sign in the name of the applicant organization.

After completion of the above documents, submit the signed copy of the entire Global Data Agreement (Summary and Terms and Conditions) to **DataOps@nasdaq.com.**

If your firm prefers to mail the documents, please use the following address:

**Nasdaq Global Data Products**
805 King Farm Boulevard, Rockville, MD 20850 USA
Phone US Office: +1 301 978 5307 or European Office: +45 33 93 33 66
Fax: +1 301 978 5295

Please allow a minimum of **two (2) weeks** for Nasdaq to process your submission.

Please direct questions to **DataOps@nasdaq.com** or +1 301 978 5307 or **+**45 33 93 33 66.



# Nasdaq Global Data Agreement Summary

This Agreement is made by and between Nasdaq, Inc., a Delaware limited liability company whose principal place of business is located at 151 W. 42nd Street, New York, New York 10036, and the Distributor, as identified below.

WHEREAS, Nasdaq has developed a System which enables eligible individuals or entities to receive certain Information, as that term is more fully defined herein, relating to a) eligible securities or other financial instruments, markets, products, vehicles, indicators or devices; b) persons regulated by, or to activities of, Nasdaq; c) information, data and services offered by Nasdaq from other sources; or d) other information and data from Nasdaq; and

WHEREAS, Distributor, representing that it is eligible to do so, is desirous of receiving the Information; and

WHEREAS, Distributor, acknowledges that different terms may apply to the receipt of different Information, depending on the Nasdaq Market that is the source of the Information, as further set forth herein.

NOW THEREFORE, in consideration of the premises and the mutual covenants and conditions herein contained, the parties, intending to be legally bound, agree as follows:

**1. General Definitions; European Market Definitions and Interpretation.**

**1.1** General Terms.  The following terms, when used in this Agreement, shall have the meanings set out below:

**"Agreement"** shall mean this Nasdaq Global Data Agreement - Summary, together with the Nasdaq Global Data Agreement - Terms & Conditions, the Attachments, as added to, deleted from or amended from time-to-time.

**"Affiliate"** shall mean any individual, corporation, company, partnership, limited partnership, limited liability company, trust, association or other entity that, directly or indirectly through one or more intermediaries, controls, is controlled by or is under common control with such party.

**"Attachments"** shall mean any attachments, addenda, cover sheets, amendments and materials referenced herein, including, but not limited to, the Nasdaq Requirements, as any of these items may be added to, deleted from or amended from time-to-time.

**"Distributor"** shall mean Distributor and its Affiliates, as identified in writing to Nasdaq.

**"European Markets"** shall mean Nasdaq Stockholm AB, Nasdaq Oslo ASA, Nasdaq Helsinki Ltd, Nasdaq Copenhagen A/S, Nasdaq Tallinn AS, Nasdaq Riga AS AB Nasdaq Vilnius and Nasdaq Iceland hf.

**"Information"** shall mean certain data and other data disseminated that has been collected, validated, processed and recorded by the System or other sources made available for transmission to and receipt from either a Redistributor or from Nasdaq relating to: a) eligible securities or other financial instruments, markets, products, vehicles, indicators or devices; b) activities of a Nasdaq Company; c) other information and data from a Nasdaq Company. Information also includes any element of Information as used or processed in such a way that the Information can be identified, recalculated or re- engineered from the processed Information or that the processed Information can be used as a substitute for Information.

**"Nasdaq Markets"** shall mean the regulated securities and options exchange subsidiaries of Nasdaq and other unregulated subsidiaries of Nasdaq, including, but not limited to, The NASDAQ Stock Market ("NASDAQ"), the European Markets, Nasdaq BX ("BX"), Nasdaq PHLX ("PHLX"), and the Philadelphia Board of Trade ("PBOT"). The Nasdaq Markets are each a **"Nasdaq Market."**

**"Nasdaq Requirements"** shall mean (i) the rules, regulations, interpretations, decisions, opinions, orders and other requirements of the SEC or an FSA, as may be applicable based upon the Nasdaq Market from which the Information is received ; (ii) the rules and regulations, disciplinary decision and rule interpretations applicable to Nasdaq Markets (iii) the Nasdaq Markets' decisions, policies, interpretations, operating procedures, specifications, requirements and other documentation that is regulatory or technical in nature (including, but not limited to, user guides) published on the NASDAQ Trader website located at www.NASDAQTrader.com or another website accessible by and made known to Distributor; and (iv) all other applicable laws, statutes, rules, regulations, orders, decisions, interpretations, opinions and other requirements, whether promulgated by the United States, England, Sweden or any other applicable jurisdiction (including in the area of intellectual property); and (v) the successors, as they may exist at the time, of the components of the Nasdaq Requirements.

Version 4.8

**"Nasdaq"** shall collectively mean Nasdaq, Inc., a Delaware corporation and its subsidiaries and Affiliates.

**"Nasdaq Trader"** shall mean the website located at [www.NASDAQTrader.com](www.NASDAQTrader.com) or its successor site(s).

**"System"** shall mean any system Nasdaq has developed for the creation and/or dissemination of Information.

**"Glossary of Terms"** included in Nasdaq Global Data Agreement - Terms and Conditions. Other capitalized terms shall have the meaning set out in the Glossary of Terms.

**1.2** European Market Definitions & Interpretation.  Where, and to the extent that, the Distributor is licensing, distributing or otherwise using Information under this Agreement from any European Markets (or any other Nasdaq market under the jurisdiction of the European Securities and Markets Authority, or its successor), then the term "Distributor" within the Agreement or otherwise referenced in any Nasdaq Requirements shall be replaced with the term "Customer". For this purpose, "**Customer**" shall be defined as the natural and/or legal person who signs the Agreement with Nasdaq and is invoiced for the European Market data fees (if applicable).  Additionally, for purposes of the European Markets, the Agreement shall be deemed a so-called 'market data license agreement'.

## 2. Scope of Agreement.

**2.1** Nasdaq grants to Distributor a worldwide, non-exclusive, non-transferable license to receive use, process and store the Information during the term of this Agreement only for the purpose of providing the Information in accordance with the Nasdaq Requirements and approved by Nasdaq and not for any purpose inconsistent with the terms of this Agreement. Distributor may not sell, lease, furnish or otherwise permit or provide access to the Information in any manner not previously approved by Nasdaq in writing.

**2.2** Distributor accepts the terms and conditions of this Agreement and guarantees and accepts full responsibility for the actions or inactions of all of its Affiliates under this Agreement as if such action or inaction were that of Distributor.

**2.3** Nothing in this Agreement will create or be deemed to create a partnership or agency relationship between the parties to the Agreement.

## 3. Term and Termination.

**3.1** The original term of this Agreement shall commence on the earlier of (i) the date of this Agreement or (ii) the date the Information is provided but not earlier than January 1, 2009.

**3.2** Unless this Agreement is otherwise terminated, the term shall continue until this Agreement is terminated by at least ninety (90) days prior written notice by Nasdaq or by at least thirty (30) days prior written notice by Distributor, with expiry effective at the end of a calendar month.

**3.3**  Either party shall have the right to terminate this Agreement in accordance with the provisions of the Nasdaq Global Data Agreement Terms and Conditions.

## 4. Entire Agreement, Modifications.

**4.1** This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes all prior negotiations, communications, writings and understandings.

**4.2** Either party may only modify this Agreement in accordance with the provisions of the Nasdaq Global Data Agreement - Terms and Conditions. Nasdaq is obligated to offer terms that are not unreasonably discriminatory between applicants and Distributors and Recipients, subject to such orders, rules or regulations of the SEC or an FSA, and as such, Nasdaq will not agree to any material term, condition or provision more favorable to a third party, than such material terms, conditions and provisions applicable to Distributor. For Information disseminated from Nasdaq Markets based in the United States and subject to SEC oversight, Nasdaq will not make any changes to the Agreement that are inconsistent with Section 6(b) of the Exchange Act and undertaking #5 in [www.sec.gov/litigation/admin/3437538.txt](www.sec.gov/litigation/admin/3437538.txt). For Information disseminated from another Nasdaq Market, Nasdaq will similarly adhere to all applicable regulatory obligations of an FSA.

## 5. Affiliates.

If this Agreement will be applicable to an Affiliate, Distributor must submit a list of any such Affiliate(s) to Nasdaq. By submitting the names of its Affiliate(s), Distributor agrees that the contact information set forth herein shall be deemed to

be the contact information for each Affiliate and that DISTRIBUTOR SHALL ASSUME ALL RESPONSIBILITY FOR AND WILL HOLD HARMLESS AND INDEMNIFY Nasdaq AGAINST ANY ACTION OR INACTION BY AN AFFILIATE AS IF SUCH ACTION OR INACTION WERE THAT OF DISTRIBUTOR, AND, DISTRIBUTOR AND ITS AFFILIATE(S) SHALL BE JOINTLY AND SEVERALLY LIABLE FOR ALL ACTIONS AND/OR INACTIONS OF THE OTHER(S). All of the rights and licenses granted to Distributor under this Agreement will apply to such Affiliates(s) to the same extent as applicable to Distributor.

## 6. Assignment.

**6.1** This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective permitted successors or assigns.

**6.2** Neither party shall assign this Agreement (including by operation of law) without the prior written consent of the other party, and such consent not to be unreasonably withheld, provided however, that: (a) Nasdaq may assign this Agreement in part or in whole to one of its Affiliates or subsidiaries, without the prior written consent of the other party; and (b) Distributor may assign this Agreement in whole (but, for the avoidance of doubt, not any of the Attachments) to one of its Affiliates or subsidiaries, without the prior written consent of Nasdaq, provided that Distributor is not currently in breach of this Agreement or delinquent in any fees owed.

## 7. Governing Law; Construction.

For Information received, this Agreement shall be deemed to have been made in the jurisdiction of the applicable Nasdaq Market as detailed in Appendix 1.

## 8. Notices; Notification of Changes.

**a.** All notices and other communications (except for invoices) required to be given in writing under this Agreement shall be directed to the signatories or, in the alternative, to the individuals identified in subsections (I) and (II) below Nasdaq may also post the applicable notice or other communication on the NASDAQ Trader website (or successor thereto) and any such notice shall not be required to be directed to the signatories or individual identified in subsection (I). Distributor may update Subsection (I) upon notice to Nasdaq.

**b.** Notices shall be deemed to have been duly given by any one (or more) of the following methods,:

**(i)** upon actual receipt (or date of first refusal) by the parties, or

**(ii)** upon constructive receipt (or date of first refusal) if sent by certified mail, return receipt requested, or any other delivery method that actually obtains a signed delivery receipt, to the following addresses or to such other address as any party hereto shall hereafter specify by prior written notice to the other party or parties below, or

**(iii)** upon posting the notice or other communication on the NASDAQ Trader website or a successor site, or

**(iv)** upon receipt, if a valid email address is provided and remains current, Nasdaq may give notice to or communicate with Distributor by email addressed to the persons identified in subsection (a) or to such other email address or persons as Distributor shall hereafter specify by prior written notice. By providing an email address, Distributor agrees that any receipt received by Nasdaq from Distributor's service provider or internet computer server indicating that the email was received shall be deemed proof that Distributor received the message. If Distributor cannot see or print all or any portion of the message, Distributor agrees that it is Distributor's responsibility to contact Nasdaq at +1 301 978 5307.

**(I) If to Distributor:**

Contact Name: _____

Title: _____

Address: _____

_____

Telephone #: _____

Fax #: _____

Email: _____

With, in the event of notices of dispute or default, a required copy to:

_____

**(II) If to Nasdaq:**

Nasdaq, Inc.
805 King Farm Boulevard
Rockville, MD  20850
USA
Phone: +1 301 978 5307,#2 or +45 33 93 33 66
DataOps@nasdaq.com

With, in the event of notices of default or dispute, a required copy to:

**Nasdaq, Inc.** Office of General
Counsel Attn: Contracts Group
805 King Farm Boulevard
Rockville, MD 20850

IN WITNESS WHEREOF, the parties hereto have caused this Agreement, and the Terms and Conditions attached hereto and incorporated by reference, to be executed by their duly authorized officers.

**Distributor:** _____
(PRINT NAME OF FIRM)

By: _____
(SIGNATURE)

Name of
Signatory: _____
(PRINT NAME OF SIGNATORY)

Title: _____
(AUTHORIZED OFFICER)

Date: _____

**Distributor's Principal Place of Business:**

_____

**Identification of Distributor:**
a)  type of entity, i.e., corporation, limited partnership, general partnership, sole proprietorship, etc.:

_____

b)  state or country of incorporation or registration, if applicable:

_____

Nasdaq, Inc. on behalf of Nasdaq and the Nasdaq Markets

Signature: _____

Name of
Signatory: _____

Title: _____

Date: _____



# Global Data Agreement Terms & Conditions

## 1. DEFINITIONS.

**(a)** **"Act"** shall mean the Securities Exchange Act of 1934, applicable only to Information disseminated from a Nasdaq Market in the United States.

**(b)** **"Claims or Losses"** shall mean any and all direct liabilities, obligations, losses, damages, penalties, claims, actions, suits, judgments, and reasonable costs and expenses of whatever nature, whether incurred by or issued against a Party, including, without limitation: (i) indirect, special, punitive, consequential, or incidental loss or damage (including, but not limited to, trading losses, loss of anticipated profits, loss by reason of shutdown in operation or increased expenses of operation, or other indirect loss or damage); and (ii) reasonable administrative costs, litigation costs, and auditors' and attorneys' fees, both in-house and outside counsel, and related disbursements.

**(c)** **"Nasdaq Confidential Information"** shall mean the confidential information, data, or techniques that, in the course of performance of the Agreement, Distributor may obtain from Nasdaq.

**(d)** **"Data Feed Recipient"** shall mean any Recipient outside of Distributor that (i) receives Information from the Distributor and (ii) for which the Distributor cannot substantially control the Information for the purpose of reporting usage or qualification.

**(e)** **"Derived Data"** shall mean any information generated in whole or in part from the Information such that the information generated cannot be reverse engineered to recreate the Information, or be used to create other data that is recognizable as a reasonable substitute for such Information.

**(f)** **"Distributor Invoiced Recipient"** shall mean any Recipient that, per Nasdaq's decision, are charged or assessed by Distributor for the Information.

**(g)** **"Distributor's Service"** shall mean the goods or services provided by Distributor, whether internally or externally, which is based on or uses the Information or of which the Information is a part.

**(h)** **"Distributor's System"** shall mean one or more of Distributor's systems which meet the specifications (including, but not limited to, interface and operational requirements) set forth by Nasdaq through which Distributor accesses the Information and distributes Distributor's Service.

**(i)** **"External Recipient"** shall mean any Recipient not affiliated with the Distributor that receives Information where the Distributor can substantially control the Information for the purpose of reporting usage or qualification.

**(j)** **"FINRA"** shall mean the Financial Industry Regulatory Association.

**(k)** **"FSA"** shall mean a Financial Services Authority in Sweden, the United Kingdom, or other jurisdiction other than the United States.

**(l)** **"Internal Recipient"** shall mean any Recipient affiliated with the Distributor that receives Information where the Distributor can substantially control the Information for the purpose of reporting usage or qualification.

**(m)** **"Nasdaq Invoiced Recipients"** shall mean any Recipient that Nasdaq chooses to invoice, as distinguished from Distributor Invoiced Recipients.

**(n)** **"Nasdaq Specifications"** shall mean the specifications, as the same may be amended from time to time with which Distributor's System must comply, which specifications are available from Nasdaq upon request.

**(o)** **"Other Information"** shall have the meaning given to it in Section 4(a) of this Agreement.

**(p)** **"Recipient"** shall mean any natural person, proprietorship, corporation, partnership, or other entity whatsoever that receives Information from the Distributor.

**(q)** **"Redistributor"** shall mean another distributor (i) from which Distributor receives the Information and (ii) for which such distributor cannot substantially control the Information received by the Distributor for the purposes of reporting usage and qualification.

**(r)** **"Service Facilitator"** is a natural person, proprietorship, corporation, partnership, or other entity whatsoever receiving Information from Distributor for the sole purpose of facilitating dissemination of Information through Distributor's Service in accordance with the terms and conditions of this Agreement.

**(s)** **"Third Party Information Providers"** shall mean those individuals and entities that provide information, goods and services to Nasdaq in connection with the creation of the Information. Such information, goods and services shall be included in the definition of Information.

## 2. AGREEMENT TO PROVIDE INFORMATION; COMPLIANCE WITH NASDAQ DATA REQUIREMENTS; DISTRIBUTOR WARRANTY.

Until this Agreement is terminated, cancelled or rescinded pursuant to its terms, Nasdaq agrees to provide to Distributor, either directly or from a Redistributor, on the terms and conditions set forth herein, the Information, as described in this Agreement or in the Nasdaq Requirements, that Distributor requests and to which Distributor is eligible to receive under the Nasdaq Requirements. Distributor warrants that it will only use the Information, in compliance with this Agreement.

## 3. NASDAQ'S SYSTEM, CHARGES.

Distributor acknowledges and agrees that nothing in this Agreement constitutes an undertaking by Nasdaq to continue: (a) the Information, the System, or any aspect of either, in the present form or configuration or under the current Nasdaq Specifications or with the current Distributor's System; or (b) to use existing communications facilities. Nasdaq, in its sole discretion, may make changes, modifications and/or deletions other than routine modifications, additions or deletions, from time to time, (a) to the Information, the System, or any aspect of either; (b) to the Nasdaq Specifications; (c) to its communications facilities; or (d) to Nasdaq's decisions, policies, operating procedures, requirements, and other documentation (including, but not limited to, user guides). Nasdaq shall undertake reasonable efforts to notify Distributor with at least thirty (30) days notice of any non-material changes and at least ninety (90) days notice of any material modification, addition or deletion, except to the extent a shorter period is (a) otherwise permitted herein, (b) required due to a malfunction in the System or Information or other emergency situation that necessitates modifications, additions or deletions on an accelerated basis or otherwise precludes such advance notice; or (iii) required pursuant to an order of a court, an arbitrator, or a regulatory agency. Notwithstanding the foregoing, any changes in the charges for, or associated with, the Information may be made on thirty (30) days notice to Distributor, but Nasdaq shall make commercially reasonable efforts to provide at least ninety (90) days notice to Distributor. **Receipt or use of the Information after the applicable notice period for any modification, addition or deletion shall constitute acceptance of the Information, the System, the Nasdaq Specifications, or other decisions, policies, operating procedures, requirements, or other documentation as so changed.**

## 4. LICENSE TO USE INFORMATION, PROPRIETARY RIGHTS.

**(a)** If the interface with the System or usage of Information identified by Distributor in accordance with the Nasdaq Requirements enables Distributor to receive information for which Distributor has not been authorized ("**Other Information**") or if Nasdaq otherwise inadvertently transmits Other Information to Distributor, Distributor shall notify Nasdaq and Distributor shall not knowingly furnish or knowingly permit to be furnished such Other Information to any third party or other place. Nasdaq shall have the right to monitor Distributor's usage of Information to ensure compliance with this Section including through manual and/or auto extraction of Information from Distributor's System or Service notwithstanding any terms of service or other agreement governing such Distributor's System or Service. If Nasdaq becomes aware of the fact that Distributor is receiving or distributing such Other Information, Nasdaq shall so notify Distributor. If Distributor knowingly so furnishes the Other Information to any third party or to any other place, or knowingly permits the Other Information to be so furnished, or otherwise knowingly makes use of the Other Information, Distributor shall be liable to Nasdaq pursuant to this Agreement for the Other Information, including, but not limited to, for charges for the Other Information. Distributor is considered to have knowingly furnished or used the Other Information if Distributor intentionally undertakes to interface with the System or otherwise uses the Information other than as identified by Distributor in accordance with the Nasdaq Requirements or undertakes any efforts to market Distributor's Service that is based on, uses or intentionally distributes the Other Information or of which the

Other Information is a part. If knowingly received, Other Information shall be considered as Information for all other purposes under this Agreement.

**(b)** Distributor represents and warrants that the usage of Information identified by Distributor in accordance with the Nasdaq Requirements, including, but not limited to, the data processing equipment, software, and communications facilities related thereto, is true, complete and not misleading. Recipients are authorized to receive and use the Information only for the purposes set forth in the applicable Nasdaq Requirements. Any use of the Information by Distributor or Recipients, including, but not limited to, retransmission or reprocessing, unless expressly described in in accordance with the Nasdaq Requirements, is prohibited, and such approval shall not be unreasonably withheld.

**(c)** Should Distributor desire to make any use of the Information (including, but not limited to, developing or communicating derivative information based upon the Information, retransmission, redistribution, reproduction or calculation of indices) in any manner not provided in accordance with the Nasdaq Requirements, Distributor may do so by submitting a revised usage of Information and only with prior written approval by Nasdaq of such use and upon payment of the fees applicable to the use approved.

**(d)** Distributor shall be entitled to change the display format identified by Distributor in accordance with the Nasdaq Requirements; *provided* that: for a material change (i) Distributor shall notify Nasdaq, describing such change in reasonable detail, as soon as reasonably practicable or within fifteen (15) days after implementation of any such change; and (ii) Distributor believes in good faith that such change complies with the Nasdaq Requirements. Distributor shall not be required to notify Nasdaq of non-material changes. Distributor will attribute source as set forth in the Nasdaq Requirements. Distributor shall not remove or alter any intellectual property ownership and/or identification notices found within the Information except with Nasdaq's prior written approval.

**(e)** Distributor agrees (i) not to format, display, or alter the information or data received through and from the Information in violation of Nasdaq Requirements, including, but not limited to, Nasdaq 's Specifications; (ii) not to affect materially the integrity of the Information; (iii) not to alter the Information in any manner that adversely affects its accuracy or integrity; and (iv) not to render the Information inaccurate, unfair, uninformative, fictitious, misleading, or discriminatory. Distributor represents that it will not interfere with or adversely affect any of the component parts or processes of the Information or the System, or any use thereof by any other authorized individuals or entities, or the distribution or operation of the Information or the System. If Distributor becomes aware of any unauthorized use by a Recipient, Distributor shall notify Nasdaq immediately of such use.

**(f)** Distributor may use, on its premises, the Information in connection with use identified by Distributor in accordance with the Nasdaq Requirements, without charge (except for any taxes, charges or assessments (other than taxes imposed on the net income of Nasdaq) by any foreign or domestic national, state, provincial or local government bodies, or subdivisions thereof, and any penalties or interest relating to the provision of the Information to Distributor), for advertisement, demonstration, product development, technical operations, monitoring of data quality and customer service. Distributor may also make limited use, off its premises, of the Information, as part of the Distributor's Service, for sales and marketing purposes (including, but not limited to, use at trade shows) and for demonstration purposes to potential clients. Upon request, Distributor shall provide Nasdaq or its designee with information about, and demonstrate, such non-fee liable uses. All other provisions of this Agreement shall remain applicable, including, without limitation, audit by Nasdaq. Use of the Information by Distributor for securities transactions or to support the trading of securities by Distributor's clients shall be considered a fee-liable use.

**(g)** Each Distributor that provides data predominantly to External Recipients agrees that during the term of this Agreement, and upon request from Nasdaq, will provide at no cost to Nasdaq, two (2) subscriptions to Distributor's Service together with the equipment, if equipment is required to receive the Information, used to receive and to display or communicate the Distributor's Service and the related telecommunications facilities. Nasdaq represents and agrees that such subscriptions will be used solely for purposes of monitoring the Information and demonstrating Distributor's Service. Upon request, Distributor will make available marketing materials and user guides for all components of the Distributor's Service that include the Information.

**(h)** Distributor shall take reasonable security precautions to prevent unauthorized individuals or entities from gaining access to the Information. Distributor shall comply with all reasonable security specifications or requirements of Nasdaq in order to prevent the Information from being improperly used or accessed or from being improperly taken. Distributor shall notify Nasdaq promptly upon any breach in security procedures related to the Information of which it becomes aware.

**(i)** Distributor acknowledges and agrees that, as between the two parties, subject to Section 4(j) below, Nasdaq has proprietary rights in the Information and data that (i) originates on or relates to trading on any of the Nasdaq Markets; (ii) relates to activities that are regulated or operated by one or more of the Nasdaq Markets, (iii) Nasdaq derives from Information and data that originates on or relates to any Nasdaq Market, and (iv) compilation or other rights in information and data that Nasdaq gathers from other sources pursuant to separate agreements with those sources. Subject to Section 4(j) below, all Information, including without limitation any and all intellectual property rights inherent therein or appurtenant thereto, shall, as between the two parties, be and remain the sole and exclusive property of Nasdaq. Distributor shall not, by act or omission, diminish or impair in any manner the acquisition, maintenance, and full enjoyment by Nasdaq, its licensees, transferees and assignees, of the proprietary rights of Nasdaq in the Information and System. Distributor acknowledges and agrees that Third Party Information Providers have exclusive proprietary rights in their respective information and data and services.

**(j)** Notwithstanding anything contained herein or the Nasdaq Requirements: (a) Nasdaq makes no proprietary claim to any Derived Data; (b) Nasdaq acknowledges that Distributor retains all ownership and other rights associated with data that Distributor or Distributor's agent enters into the Service and/or the System as more fully reflected in the separate agreement between Nasdaq and Distributor ("**Distributor's Data**"); and (c) No provision in this agreement shall impair any right, interest or use of Distributor's Data granted by operation of SEC Rules or any other rule or law.

**(k)** Recipients may, on a non-continuous basis, furnish limited amounts of the Information to clients in written advertisements, correspondence or other literature or during voice telephonic conversations not entailing computerized voice, automated information inquiry systems or similar technologies.

## 5. PAYMENT; TAXES.

**(a)** Distributor agrees to pay to Nasdaq or Nasdaq's designee the then effective charges as set forth in the Nasdaq Requirements, provided on **www.NASDAQTrader.com**, or by notice, including, but not limited to, all applicable deposits and communications, facilities, electronic fund transfer fees, interest and late fees and/or penalties (including, but not limited to, charges incurred after termination, cancellation, or rescission). Distributor agrees to pay the amounts accurately invoiced by Nasdaq, including monthly adjustments for updated reporting. Unless otherwise set forth in the Nasdaq Requirements, Distributor shall remit the charges no later than fifteen (15) days after the end of the calendar month for which charges are incurred. Distributor shall pay Nasdaq, on demand or upon invoice, interest on any amounts due Nasdaq pursuant to this Agreement which are not paid within sixty (60) days after the applicable due date. Interest shall accrue at a rate equal to the lesser of (i) nine percent (9%) per annum or (ii) the maximum amount permitted by applicable law, for the period commencing per for the period commencing sixty (60) days after the applicable due date and ending upon receipt of payment to Nasdaq. Nothing in this Agreement shall prevent Distributor from separately charging its Recipients for the Distributor's Service.

**(b)** Unless another form of billing is otherwise set forth in the Nasdaq Requirements*,* all Recipients shall be either Distributor Invoiced Recipient or Nasdaq Invoiced Recipients; provided Recipients of Information from European Markets must be Distributor Invoiced Recipients. Distributor is not required to actually invoice Distributor Invoiced Recipients, but, in any event, Distributor shall be responsible for the charges associated with the Distributor Invoiced Recipients. Distributor shall bear all risk of non-payment by Distributor Invoiced Recipients or by Recipients for whom Distributor is responsible for the charges. Nasdaq will bear the risk of non-payment by Nasdaq Invoiced Recipients. Distributor shall reasonably cooperate with Nasdaq in any lawful efforts by Nasdaq to collect unpaid charges due Nasdaq from current or former Nasdaq Invoiced Recipients. Distributor may choose to pay Nasdaq any charges due on behalf of any Recipient. Upon Distributor's payment to Nasdaq on behalf of any Recipient of any charges due hereunder, Distributor shall be subrogated to any and all rights of Nasdaq to recover such charges.

**(c)** In addition, for Distributor Invoiced Recipients, Distributor shall pay any taxes, including, but not limited to, any VAT, charges or assessments (other than taxes imposed on the net income of Nasdaq) by any foreign or domestic national, state, provincial or local government bodies, or subdivisions thereof relating to the provision of the Information pursuant to this Agreement, and any related penalties or interest. In addition, if Distributor or any Distributor Invoiced Recipients is required by applicable law to deduct or withhold any such tax, charge or assessment from the amounts due Nasdaq, then such amounts due shall be increased so that the net amount actually received by Nasdaq after the deduction or withholding of any such tax, charge or assessment, will equal one hundred percent (100%) of the charges that are owed.

**(d)** All payments for Nasdaq Information products shall be made in immediately available funds, in the currency specified by

Nasdaq by a check to Nasdaq, by electronic funds transfer to an institution of Nasdaq's choosing or by any other form of payment as specified by Nasdaq in Appendix 1.

## 6. DISTRIBUTOR REPORTING.

**(a)** Distributor shall comply with the applicable reporting requirements of Nasdaq as set forth in this Agreement and the Nasdaq Requirements. Unless otherwise set forth in the Nasdaq Requirements, Distributor shall use reasonable efforts to provide such reporting within fifteen (15) days of the end of the applicable reporting period set forth by Nasdaq in the Nasdaq Requirements but Nasdaq shall not consider such reporting to be late until forty-five (45) days after the due date.

**(b)** Distributor is limited to a sixty (60) calendar-day grace period in which to revise or correct its original usage reporting in order to obtain retroactive credits. The grace period begins on the due date of the original usage report, but is extended to the next business day if the last day of the grace period coincides with a market holiday or weekend day. Nasdaq will not provide Distributor with back credits for original or revised reporting received after the end of the grace period. Revised reporting could include, but is not limited to, reclassification of Recipients, reporting of usage under alternative pricing structures and correction of errors by Distributor. This Section 6 does not limit Distributor's liability to Nasdaq for underreporting of usage.

## 7. DISTRIBUTOR AUDIT.

**(a)** From time to time, and no more than once in any twelve (12) month period unless necessary due to suspected non-compliance with the material provisions of this Agreement, Nasdaq may cause Distributor's (i) records relating to the Information, (ii) reports and payments relating to the Information, and (iii) all instruments, systems, services, platforms and apparatus used in connection with the receipt and/or use of the Information**,** to be reviewed by Nasdaq personnel and/or auditors of Nasdaq's choice. For avoidance of doubt, any such Nasdaq personnel or auditors shall not access, examine, observe, review or in any way gain disclosure to any information of Distributor, which is protected under applicable banking secrecy regulations. The audit shall be scheduled upon reasonable notice to Distributor, during Nasdaq Market normal business hours, and conducted in locations where, as applicable, Distributor's records are kept, where Distributor's platforms or systems are located, and/or where Distributor uses the Information. Nasdaq shall respect Distributor security policies while performing the audit. Nasdaq will make reasonable efforts to provide at least four (4) weeks advance written notice of the audit, unless the audit is scheduled due to suspected material non-compliance. Distributor shall promptly provide information or materials in response to any request for information relating to the Information. Distributor shall make available for examination all records, reports, payments, and supporting documentation, and Distributor's platforms and systems and Distributor's Service necessary in the judgment of the Nasdaq audit personnel to reach a conclusion as to the accuracy and completeness of: (i) Distributor's reports to Nasdaq, (ii) the payments connected therewith, (iii) the description provided by Distributor in accordance with the Nasdaq Requirements and (iv) compliance with this Agreement and the Nasdaq Requirements.

**(b)** Nasdaq shall endeavor to ensure that, where reasonably practicable, Distributor is provided with a preliminary audit response within ninety (90) days following the completion of any audit. Nasdaq shall discuss the outcome of any such preliminary audit response in good faith with Distributor or, at Distributor's election, with Distributor's designee.

**(c)** After receipt of the preliminary audit response, Distributor may then elect, at Distributor's sole discretion and at the Distributor's sole expense, to conduct a subsequent review to determine the magnitude of the non-compliance. This subsequent review shall be completed and submitted to Nasdaq within ninety (90) days after the preliminary audit response is received by Distributor.

**(d)** If Nasdaq and Distributor are not able to reach agreement concerning the preliminary audit response nor the subsequent review within ninety (90) days of Distributor's receipt of the preliminary audit response, provided that Nasdaq has proceeded with such examination and audit in good faith in accordance with the provisions hereof, then Nasdaq's determination (the "Final Audit") shall be deemed conclusive.

**(e)** If the Final Audit determines there is underreporting, underpayment or other financial non-compliance with this Agreement (and/or discloses additional underreported or underpaid amounts or other financial non-compliance), then such amounts shall be remitted to Nasdaq, together with applicable interest as detailed in Section 5(a) within sixty (60) days of the completion of the Final Audit. If Distributor fails to remit such additional amounts to Nasdaq by the end of this sixty (60) day cure period, Nasdaq may, in its discretion at any time, with prior notice to Distributor, terminate as provided in Section 9 of this Agreement. Distributor's liability shall be limited to unpaid fees, together with interest, for the three (3) years preceding the earlier of the

date that Distributor, Distributor's auditors or Nasdaq first knew or determined that such underreporting, underpayment or other financial noncompliance has occurred, plus any costs and expenses as set forth in Section 7(f) below, provided such underreporting, underpaying or other financial non-compliance is a result of a good faith error by Distributor. If the Final Audit discloses an overpayment, then Nasdaq will apply the overpayment for the sixty (60) days prior to the end of the period being reviewed as a credit against amounts due from Distributor.

**(f)** If any underreporting, underpayment or other Distributor financial non-compliance is found to be equal to or greater than ten percent (10%) of the applicable reported number for any audited or unaudited period referred to herein, Distributor shall, in addition to remitting the fees and applicable interest due relative to such underreporting, underpayment  or other financial non-compliance, reimburse Nasdaq, as per Section 5 of this Agreement for any audit, legal or administrative costs and expenses incurred to detect and rectify such underreporting, underpayment or other financial non-compliance, *provided*, *however*, that such costs and expenses are incurred in good faith and are not unreasonable given the amount of work necessary to detect and determine the extent of, and the actual amount of, such underreporting, underpayment or other financial non- compliance.

**(g)** If the Final Audit reveals any material errors or omissions in the use identified by Distributor in accordance with the Nasdaq Requirements, and/or other material non- financial non-compliance with the Nasdaq Requirements, Distributor shall submit an updated use description and/or any other applicable materials demonstrating compliance with the Nasdaq Requirements, where reasonably practicable, within ninety (90) days after receipt of the preliminary audit response If Distributor fails to demonstrate compliance during this cure period, Nasdaq may, in its discretion at any time, with prior notice to Distributor, terminate as provided in Section 9 of this Agreement.

**(h)** If Distributor's payment of fees for Information is fixed, Nasdaq will, in lieu of a Distributor Audit, request relevant information or documentation related to Distributor's use of the Information; provided, however, that Nasdaq shall retain the right, with reasonable Notice to Distributor, during normal business hours, to conduct a Distributor Audit on a Confidential basis of any relevant documentation of Distributor to ensure that Distributor's use of the Information conforms to the Nasdaq Requirements. Such Distributor Audit may only take place once per calendar year and only if such Distributor Audit is deemed reasonably necessary by Nasdaq due to suspected non- compliance by Distributor with the material provisions of this Agreement.

## 8.  QUALIFICATION REQUIREMENTS; DISTRIBUTOR INDEMNIFICATION.

**(a)** Except as otherwise set forth in this Agreement, Distributor shall only furnish, or cause or permit to be furnished, all or any part of the Information to a Recipient who, at the time of receipt thereof, is of a type qualified (as set forth in the Nasdaq Requirements) to receive the Information from Distributor. Distributor agrees that Nasdaq may have different qualification requirements for different Recipients, including, but not limited to different Recipients of different types of Distributor's Services.

**(b)** All Data Feed Recipients must enter into a Nasdaq Global Data Agreement.  For all other External Recipients, Distributor shall have a legally valid and enforceable contract with such External Recipient that (i) governs the accounts held by External Recipients with the Distributor through which the External Recipient is entitled to access the Information, including any limitations on an External Recipient's right to redistribute the Information, and (ii) includes the disclaimer detailed below or a substantially similar disclaimer. Distributor shall indemnify Nasdaq and all of its officers, directors, employees, agents and Third Party Information Providers (collectively, the "**Nasdaq Indemnified Parties**") against any assertion of claims or losses relating against the Nasdaq Indemnified Parties made by an External Recipient who receives the Information from Distributor (or any person relying upon the Information received by such a Recipient) arising from Distributor's election to distribute Information to such External Recipient.

*"© <Insert applicable year> Nasdaq, Inc. All Rights Reserved. The information, data, analysis and Information contained herein (i) include the proprietary information of Nasdaq, Inc. and applicable Nasdaq Market, (ii) are subject to applicable Nasdaq Requirements (http://nasdaqtrader.com/Trader.aspx?id=GDP_Ops); (iii) may not be copied or further disseminated except as specifically authorized by Nasdaq, (iv) do not constitute investment advice, (v) are provided solely for informational purposes and (vi) Nasdaq makes no warranties including that the information is complete, accurate or timely. **Nasdaq and Nasdaq Market bear no liability with respect to the data, analysis and Information.**"*

**(c)** Distributor may use a Service Facilitator to facilitate the dissemination of Information in Distributor's Service, provided that Distributor has a legally valid and enforceable contract with such Service Facilitator, prior to distributing any Information to any Service Facilitator, that: (i) includes all limitations on the Service Facilitator's right to redistribute the Information; and (ii)

protects Nasdaq and the Indemnified Parties to the same extent as if the Service Facilitator had signed a Nasdaq Global Data Agreement with Nasdaq directly. Distributor shall indemnify the Nasdaq Indemnified Parties against any assertion of claims or losses relating against the Nasdaq Indemnified Parties made by a Service Facilitator who receives the Information from Distributor.

**(d)** If any Recipient fails to comply with any of the conditions, terms or provisions of this Agreement applicable to Recipients, its agreement with Nasdaq and/or Distributor for the Information, or any other agreement between Recipient and Nasdaq, or has made any representation in any such agreement which was or has become untrue, then Distributor shall, within five (5) business days after receipt of notice from Nasdaq of such failure or untruth, cease providing the Information to such Recipient and shall, within ten (10) business days following the receipt of such notice, confirm such cessation by notice to Nasdaq. Distributor shall be solely responsible for the acts and omissions of Internal Recipients. If a Recipient is to be terminated under this clause, then Nasdaq will request all Distributors to cease providing Information to such Recipients.

## 9. TERM AND TERMINATION.

**(a)** Notwithstanding the foregoing, this Agreement may be terminated by:

**(i)** either party following material breach of this Agreement by the other, upon not less than thirty (30) days prior written notice to the breaching party, unless, if the breach is capable of being cured, the breach is cured within the notice period;

**(ii)** either party, immediately, in the event that the other party becomes insolvent; or the other party makes an assignment for the benefit of creditors; or the other party does not pay its debts as they become due or admits its inability to pay its debts when due; or the other party files or has filed against it any petition under any provision of the Bankruptcy Act or an application for a receiver, trustee, or custodian is made by anyone or other party becomes the subject of any proceedings of bankruptcy, insolvency, reorganization, dissolution, receivership, liquidation or arrangement, adjustment, or composition with creditors;

**(iii)** Nasdaq, immediately, in the event that the Distributor is not permitted or not able to receive or Nasdaq is prevented from disseminating the Information, or any part thereof; or any representation, warranty or certification made by Distributor in this Agreement or in any other document furnished by Distributor is, as of the time made or furnished, materially false or misleading; Distributor proceeds with a proposed action which would result in a default of its obligations or covenants under this Agreement or in a breach of any representation, warranty or certification,

which is material to the Nasdaq Markets for regulatory, commercial or other reasons, made by Distributor in connection herewith, after Nasdaq has notified Distributor that such proposed action would constitute a default hereunder Distributor; Nasdaq may terminate for cause Distributor's receipt of any other service or product provided by or on behalf of Nasdaq; or Nasdaq, in its sole reasonable discretion, determines that any failure on the part of the Distributor to comply with this Agreement has or is likely to have a materially adverse impact on the operation or performance of the System, Information or a Nasdaq Market or likely to cause disproportionate harm to Nasdaq's interests should termination be delayed;

**(iv)** Nasdaq, upon not less than thirty (30) days prior written notice, in the event that any representation, warranty or certification made by Distributor in the Agreement or in any other document furnished by Distributor becomes untrue or inaccurate and is not made true or accurate within the notice period.

**(v)** Nasdaq, upon not less than ninety (90) days prior written notice, should it determine that it will cease providing the

same type of Information to all other eligible individuals or entities that were receiving the same type of Information as Distributor.

**(vi)** Distributor, upon not less than thirty (30) days prior written notice, should Distributor determine that it cannot implement additional security requirements requested by Nasdaq under Section **4(h)**.

**(b)** Distributor acknowledges and agrees that the exercise by Nasdaq of the remedies set forth herein for failure of Distributor to pay all charges, taxes, or assessments related to its receipt of the Information shall not be deemed or considered to be, and, to the extent permitted by applicable law, Distributor waives any right to represent or assert that any such exercise constitutes, an act or omission or any improper denial or limitation of access to any Information or facility operated by Nasdaq as

contemplated in: (i) Section 11A of the Act; (ii) any other provision of the Act; (iii) any rule or regulation adopted pursuant to the Act; (iv) any FSA regulation; or (v) any other applicable statutory obligation.

**(c)** The right of termination set forth herein is in addition to any other remedy at law or in equity, consistent with this Agreement, that is available to one party (including any individual Nasdaq Market) with respect to a breach by the other and is in addition to anything otherwise set forth herein.

## 10. REQUIREMENTS OF SELF-REGULATORY ORGANIZATION; ACTIONS TO BE TAKEN IN FULFILLMENT OF STATUTORY OBLIGATIONS.

Distributor acknowledges that Nasdaq may be under certain restrictions when offering the Information, as detailed in Appendix 1.

## 11. CONFIDENTIALITY; DATA PROCESSING.

**(a)** Under this Agreement, Nasdaq shall keep confidential the Distributor's records, reports and payments that it or its designee has reviewed or audited, and any other Distributor information or material reasonably considered to be of a confidential nature (whether or not designated as such). as well as any and all information received in connection with this Agreement, including but not limited to, business, financial, operational, product, service and other information. Distributor acknowledges that it may also obtain Nasdaq Confidential Information. All such confidential information shall be deemed confidential upon disclosure to the recipient and any related confidential oral or written information shall be deemed confidential upon disclosure to the recipient. Subject to Section 11(b) (i), the recipient shall use such confidential information solely for use consistent with the purposes of this Agreement; shall hold such confidential information in confidence; and shall not use, disclose, copy, or publish any such confidential information without the prior written approval of the other party except as otherwise set forth herein. The recipient shall take reasonable security precautions, at least as great as the precautions it takes to protect its own confidential information, but no less than reasonable care, to keep confidential the Confidential Information of the disclosing party. The recipient shall notify the disclosing party immediately upon discovery of any unauthorized use or disclosure of confidential information, and will cooperate with disclosing party in every reasonable way to help disclosing party regain possession of the confidential information and prevent its further unauthorized use or disclosure. The parties acknowledge that monetary damages may not be a sufficient remedy for unauthorized disclosure of confidential information, and that disclosing party shall be entitled, without waiving any other rights or remedies, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction.

**(b)** Nasdaq or the Distributor may disclose confidential information to the extent: (i) demanded by a court, arbitrator or government agency with regulatory jurisdiction over one or more of the Nasdaq Markets or over Distributor or any judicial or government order; (ii) necessary to fulfill any Nasdaq or Distributor regulatory responsibility, including any responsibility over members and associated persons under the Act; or (iii) necessary for Nasdaq and its employees, directors, and other agents to use consistent with the purposes of this Agreement. The duties in this Section 11 do not apply to data, information or techniques that are: (A) lawfully within a party's possession prior to the date of this Agreement and not under a duty of non- disclosure; (B) voluntarily disclosed to a party by a third-party so long as the party does not know that the third-party has breached any obligation not to reveal such data, information or techniques; (C) developed by a party independently of the disclosure; or (D) is or subsequently becomes publicly available without recipient's breach of any obligation owed disclosing party. All confidential information is and shall remain the property of the disclosing party. By disclosing confidential information to recipient, disclosing party does not grant any express or implied right to recipient to or under any patents, copyrights, trademarks, or trade secret information except as otherwise provided herein.

**(c)** Nasdaq shall not disclose its audit findings to any third parties (other than to its directors, independent consultants/subcontractors who are subject to confidentiality obligations or as otherwise set forth herein) and all information learned in connection with an audit shall constitute Distributor's confidential information. However, nothing herein shall prevent Nasdaq from using the audit findings to the extent the findings are used in the aggregate with other information and such aggregation does not (i) specifically identify Distributor or (ii) create a context where Distributor's identity may be reasonably inferred.

**(d)** In the course of providing the services to Distributor or in the submission of applicable reporting pursuant to the Agreement, Nasdaq may Process Personal Data as part of the services or in support of its rights (including, but not limited to, its

audit and usage review rights) under this Agreement. Distributor shall provide to Nasdaq such Personal Data as reasonably requested by Nasdaq to perform the Services and enforce its rights (including, but not limited to, its audit and usage review rights) under this Agreement. The Parties agree to comply with provisions of the Data Processing Addendum (**http://www.nasdaqtrader.com/content/AdministrationSupport/AgreementsData/GDA-DPA.pdf**) with respect to any Personal Data Processed by Nasdaq, each acting reasonably and in good faith. With respect to individuals' whose Personal Data is Processed by Nasdaq, the current publicly-posted Privacy Policy (**http://nasdaqtrader.com/Trader.aspx?id=Privacy**) shall apply to such Processing. Distributor agrees to refer any individual whose Personal Data may be processed by Nasdaq to the Privacy Policy with respect to the individual's rights with respect to such Processing by Nasdaq. Terms not otherwise defined in this Agreement shall be defined in the Data Processing Addendum.

### 12. NASDAQ WARRANTIES; DISCLAIMERS OF WARRANTIES.

NASDAQ WILL MAKE COMMERCIALLY REASONABLE EFFORTS TO OFFER THE INFORMATION AS PROMPTLY AND AS ACCURATELY AS IS REASONABLY PRACTICABLE. NOTWITHSTANDING THE FOREGOING, DISTRIBUTOR ACKNOWLEDGES AND AGREES THAT THE INFORMATION AND ANY AND ALL MATERIAL RELATED TO THE INFORMATION, INCLUDING, BUT NOT LIMITED TO, THE SPECIFICATIONS, ARE BEING PROVIDED "AS IS" WITH NO WARRANTIES OTHER THAN THOSE WARRANTIES EXPRESSLY SET FORTH IN THE DISTRIBUTOR AGREEMENT. IN THE EVENT THAT THE INFORMATION IS NOT AVAILABLE AS A RESULT OF A FAILURE BY NASDAQ TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT, NASDAQ WILL ENDEAVOR, GIVING DUE REGARD FOR THE COST, TIME, AND EFFECT ON OTHER USERS, TO CORRECT ANY SUCH FAILURE. IN THE EVENT THAT THE INFORMATION IS NOT AVAILABLE, IS INTERRUPTED, IS INCOMPLETE OR IS NOT ACCURATE OR IS OTHERWISE MATERIALLY AFFECTED FOR A CONTINUOUS PERIOD OF FOUR (4) HOURS OR MORE DURING THE TIME THAT NASDAQ REGULARLY TRANSMITS THE INFORMATION, OR FOR MORE THAN A TOTAL DURATION OF TWELVE (12) HOURS IN A SINGLE CALENDAR MONTH DURING THE TIME THAT NASDAQ REGULARLY TRANSMITS THE INFORMATION DURING A SINGLE CALENDAR MONTH, DUE TO THE FAULT OF NASDAQ (EXCEPT FOR A REASON PERMITTED IN THE AGREEMENT), DISTRIBUTOR'S OR ANY OTHER INDIVIDUAL'S OR ENTITY'S EXCLUSIVE REMEDY AGAINST NASDAQ SHALL BE, AT DISTRIBUTOR'S OPTION, EITHER A PRORATED CREDIT OR A PRORATED REFUND OF ANY MONIES DUE TO NASDAQ FROM DISTRIBUTOR (LESS MONIES REFUNDED OR CREDITED TO DISTRIBUTOR'S RECIPIENTS) FOR THE INFORMATION AT ISSUE FOR THE PERIOD AT ISSUE. SUCH CREDIT OR REFUND SHALL BE REQUESTED BY WRITTEN NOTICE TO NASDAQ WITH ALL PERTINENT DETAILS INCLUDED. IN THOSE CASES WHERE DISTRIBUTOR RECEIVES SAID CREDIT OR REFUND ON BEHALF OF ITS RECIPIENTS, DISTRIBUTOR SHALL PROMPTLY PROVIDE THE SAME CREDIT OR REFUND ON BEHALF OF NASDAQ TO DISTRIBUTOR INVOICED RECIPIENTS. BEYOND THE WARRANTIES STATED IN THIS SECTION, THERE ARE NO OTHER WARRANTIES OF ANY KIND, EXPRESS, IMPLIED OR STATUTORY (INCLUDING, WITHOUT LIMITATION, TIMELINESS, TRUTHFULNESS, SEQUENCE, COMPLETENESS, ACCURACY, FREEDOM FROM INTERRUPTION, ANY IMPLIED WARRANTIES ARISING FROM TRADE USAGE, COURSE OF DEALING, OR COURSE OF PERFORMANCE, OR THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE).

### 13. LIMITATION OF LIABILITY.

(A)      EXCEPT FOR CLAIMS ARISING FROM NASDAQ'S WILLFUL MISCONDUCT, AND/OR NASDAQ'S INDEMNIFICATION AND/OR CONFIDENTIALITY OBLIGATIONS AS SET FORTH IN THIS AGREEMENT, NASDAQ AND ITS THIRD PARTY INFORMATION PROVIDERS SHALL NOT BE LIABLE TO DISTRIBUTOR OR TO ANY OTHER PERSON FOR TRADING LOSSES, LOSS OF ANTICIPATED PROFITS, LOSS BY REASON OF SHUTDOWN IN OPERATION OR FOR INCREASED EXPENSES OF OPERATION, OR FOR INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL, OR INCIDENTAL LOSS OR DAMAGE OF ANY NATURE ARISING FROM ANY CAUSE WHATSOEVER, EVEN IF NASDAQ AND/OR ITS THIRD PARTY INFORMATION PROVIDERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EXCEPT FOR CLAIMS ARISING FROM DISTRIBUTOR'S WILLFUL MISCONDUCT, AND/OR DISTRIBUTOR'S INDEMNIFICATION AND/OR CONFIDENTIALITY OBLIGATIONS AS SET FORTH IN THIS AGREEMENT, DISTRIBUTOR SHALL NOT BE LIABLE FOR INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL, OR INCIDENTAL LOSS OR DAMAGE OF ANY NATURE ARISING FROM ANY CAUSE WHATSOEVER, EVEN IF DISTRIBUTOR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(B)  NASDAQ SHALL NOT BE LIABLE TO DISTRIBUTOR OR TO ANY OTHER PERSON FOR ANY UNAVAILABILITY, INTERRUPTION, DELAY, INCOMPLETENESS, OR INACCURACY OF THE INFORMATION THAT LASTS LESS THAN FOUR (4) CONTINUOUS HOURS DURING THE TIME THAT NASDAQ REGULARLY TRANSMITS THE INFORMATION, OR FOR LESS THAN TWELVE (12) HOURS DURING THE TIME THAT NASDAQ REGULARLY TRANSMITS THE INFORMATION DURING A SINGLE CALENDAR MONTH OR IF

THE INFORMATION IS MATERIALLY AFFECTED FOR LESS THAN FOUR (4) CONTINUOUS HOURS DURING THE TIME THAT NASDAQ REGULARLY TRANSMITS THE INFORMATION.

(C)  EXCEPT WHERE NASDAQ IS INDEMNIFYING THE DISTRIBUTOR AS SET FORTH IN THIS AGREEMENT AND/OR IS IN BREACH OF ITS CONFIDENTIALITY OBLIGATIONS UNDER THIS AGREEMENT, IF NASDAQ OR ANY NASDAQ COMPANY IS FOR ANY REASON HELD LIABLE TO DISTRIBUTOR, OR TO ANY OTHER PERSON, FOR CLAIMS ARISING FROM THE INFORMATION, WHETHER IN TORT OR IN CONTRACT, THE LIABILITY OF NASDAQ WITHIN A SINGLE YEAR OF THIS AGREEMENT (FROM THE EFFECTIVE DATE OF THIS AGREEMENT) IS LIMITED TO AN AMOUNT OF DISTRIBUTOR'S DIRECT DAMAGES THAT IS ACTUALLY INCURRED BY DISTRIBUTOR IN REASONABLE RELIANCE, AND WHICH AMOUNT DOES NOT EXCEED, AT DISTRIBUTOR'S OPTION, A MONTH'S CREDIT OR A MONTH'S REFUND OF THE AVERAGE MONTHLY AMOUNT PAID Nasdaq, CALCULATED OVER THE TWELVE (12) MONTHS PRECEDING THE CLAIM. THIS SUBSECTION SHALL NOT RELIEVE NASDAQ FROM LIABILITY FOR DAMAGES THAT RESULT FROM ITS OWN GROSS NEGLIGENCE OR WILLFUL TORTIOUS MISCONDUCT, OR FROM PERSONAL INJURY OR WRONGFUL DEATH CLAIMS.

 (D)   THE DISTRIBUTOR AND NASDAQ UNDERSTAND AND AGREE THAT THE PRICING FOR THE INFORMATION REASONABLY REFLECTS THE ALLOCATION OF RISK AND LIMITATION OF LIABILITY SET FORTH IN THIS SECTION.

(E)  NASDAQ SHALL NOT BE LIABLE TO DISTRIBUTOR OR TO ANY OTHER PERSON FOR THE UNAVAILABILITY, INTERRUPTION, DELAY, INCOMPLETENESS OR INACCURACY OF INFORMATION FROM NASDAQ 'S THIRD PARTY INFORMATION PROVIDERS.

(F)  NASDAQ SHALL NOT BE LIABLE TO DISTRIBUTOR OR TO ANY OTHER PERSON FOR THE UNAVAILABILITY, INTERRUPTION, DELAY, INCOMPLETENESS OR INACCURACY OF INFORMATION OR DATA RECEIVED FROM A REDISTRIBUTOR OR FOR ANY ACTS OR OMISSIONS OF A REDISTRIBUTOR.

## 14.  FORCE MAJEURE.

Notwithstanding any other term or condition of this Agreement, none of Nasdaq, its Third Party Information Providers (but  not other distributors) or Distributor shall be obligated to perform or observe its respective obligations under this Agreement (except for regulatory obligations) if prevented or hindered from doing so by any circumstances found to be beyond its reasonable control.

## 15.  INDEMNIFICATION.

(a)     Distributor shall defend, be liable to, indemnify, and hold the Nasdaq Indemnified Parties harmless from and against, any and all Claims or Losses imposed on or asserted against any of the Nasdaq Indemnified Parties by third parties to the extent that the Claims and Losses result from or relate to: (i) failure of Distributor, its employees, independent consultants/subcontractors, directors, and other agents to comply with the terms and conditions of this Agreement; (ii) failure of Recipients to comply with the terms and conditions of Nasdaq required agreements for the Information if Distributor has failed to notify Nasdaq of such non-compliance within ten (10) days after Distributor knows of such non-compliance, unless such Recipient is party to a Nasdaq Global Data Agreement; (iii) any assertion of Claims or Losses relating to the subject matter or existence of this Agreement against the Nasdaq Indemnified Parties made by a Recipient (or any person relying upon the Information received by such Recipient), unless such Recipient is party to a Nasdaq Global Data Agreement, excluding any such assertion relating to acts or omissions of Nasdaq; (iv) any assertion of Claims or Losses against the Nasdaq Indemnified Parties by Recipients relating to Nasdaq's exercise of its remedies against Recipients pursuant to this Agreement excluding any such assertion relating to acts or omissions of Nasdaq, unless such Recipient is party to a Nasdaq Global Data Agreement; (v) breach of any warranty by Distributor; (vi) any defense or participation by the Nasdaq Indemnified Parties in any action, suit, arbitration, or judicial or administrative proceeding involving any Claims or Losses described in this section, or (vii) the receipt or use of the Information (including representations about the Information) by Distributor, its employees, directors, and other agents contrary to the provisions of this Agreement.

(b)     Distributor's obligation to defend and indemnify under this Section 15(a) above shall be conditioned on the following (but any limits on Distributor's obligations are only to the extent that Nasdaq's failure to comply with the following has caused a material harm to Distributor's ability to defend and indemnify): (i) Nasdaq shall promptly notify Distributor in writing of the claim, action or allegation (but, in any event, in a time frame that does not prejudice the rights of Distributor or Nasdaq); (ii) Nasdaq shall cooperate fully with Distributor in the defense thereof and Distributor shall be liable to Nasdaq for Nasdaq's

reasonable expenses (excluding reimbursement for the time value of Nasdaq employees, directors, and/or other agents in providing such cooperation); (iii) Distributor shall have sole control of the defense and all related settlement negotiations, but, upon Nasdaq's request, shall apprise Nasdaq of the status of any proceedings or negotiations. Distributor shall have a right to defend provided that Distributor demonstrates to Nasdaq's reasonable satisfaction that it is financially able to defend such action and pay any judgment or settlement and counsel retained by Distributor is reasonably satisfactory to Nasdaq, and Nasdaq shall not reasonably withhold or delay its approval with respect to such matters. Distributor shall not settle any action against Nasdaq that in any way restricts or impairs Nasdaq's intellectual property rights.

**(c)** Nasdaq shall defend, be liable to, indemnify, and hold Distributor, its employees, directors, other agents, and Affiliates ("Distributor's Indemnified Parties") harmless from and against any and all Claims and Losses imposed on or asserted against Distributor's Indemnified Parties by a third party that the Information or Services as provided by Nasdaq infringes or misappropriates any patent, trade secret, copyright or other proprietary rights of any person, save to the extent that such infringement or misappropriation is attributable to a breach of this Agreement by Distributor. Nasdaq's obligation to defend and indemnify under this subsection shall be conditioned on the following (but any limits on Nasdaq's obligations are only to the extent that Distributor's failure to comply with the following has caused a material harm to Nasdaq's ability to defend and indemnify): (i) Distributor shall promptly notify Nasdaq in writing of the claim, action or allegation (but, in any event, in a time frame that does not prejudice the rights of Distributor or Nasdaq); (ii) Distributor shall cooperate fully with Nasdaq in the defense thereof and Nasdaq shall be liable to Distributor for Distributor's reasonable expenses (excluding reimbursement for the time value of Distributor's employees, directors, other agents and affiliates in providing such cooperation); and (iii) Nasdaq shall have sole control of the defense and all related settlement negotiations, but upon Distributor's request, shall apprise Distributor of the status of any proceedings or negotiations.

**(d)** Nasdaq shall not have the obligation to defend, indemnify and hold Distributor's Indemnified Parties for any and all Claims and Losses imposed on, incurred by or asserted against Distributor, its employees, directors, other agents and affiliates by any fully adjudicated and non-appealable judgment or Nasdaq negotiated settlement as a result of any allegation of infringement or misappropriation if the System, Information or any specifications have not been used in accordance with this Agreement which resulted in such infringement or misappropriation or if Distributor uses the System, Information or any specifications after Nasdaq notifies Distributor of a potential or actual infringement claim or to the extent it is based on use of a superseded version of the System, Information or any specifications if such infringement or misappropriation would have been avoided by use of the current version of the System, Information or specifications or if the infringement or misappropriation claim, action, or allegation is the result of the combination, operation, or use of the System furnished timely to Distributor by Nasdaq, Information or any specifications with hardware, software or materials if such infringement or misappropriation would have been avoided by the use of the System, Information or any specifications without such hardware, software or materials.

**(e)** In the event of a claim, action or allegation of infringement or misappropriation or if, in Nasdaq's opinion, such a claim, action or allegation is likely to occur or if the use of the System, Information or any specifications is enjoined because of infringement or misappropriation, Nasdaq may, at its sole option and expense, (i) procure for Distributor the right to continue using the System, Information or any specifications; (ii) replace or modify the System, Information or any specifications to be non-infringing, and require the return of the potentially infringing or misappropriating items, if applicable, without liability to Distributor or any other person; or (iii) terminate this Agreement immediately without liability to Distributor or any other person.

**(f)** This section and Section 8 set forth the entire liability and the exclusive remedy of Nasdaq for the infringement or misappropriation of intellectual property.

## 16. NO GOVERNMENT RIGHTS.

This Agreement neither grants nor is intended to grant, directly or through Distributor, to any governmental entity or agency any rights in technical data (including, but not limited to, software) as set forth in FAR Subpart 27.4 or any other regulation. Any such rights of a governmental entity or agency in technical data (including, but not limited to, software) shall be determined by a separate written agreement with NASDAQ.

## 17. CORPORATE NAMES; PROPRIETARY RIGHTS.

Distributor acknowledges and agrees that the Nasdaq has proprietary rights in certain names, including, but not limited to the names and trademarks of the Nasdaq, Inc. and the Nasdaq Markets and Distributor shall not use these names in any way that

would infringe upon such names and shall not use these names in any advertising or marketing materials, except with Nasdaq's prior written consent. Distributor acknowledges and agrees that Nasdaq has proprietary rights in certain trademarks, servicemarks, copyrights or patents, registered or unregistered, and Distributor shall not use these trademarks, servicemarks, copyrights or patents, registered or unregistered, in any way that would infringe upon such marks, copyrights or patents. Nasdaq acknowledges and agrees that Distributor has proprietary rights in Distributor's name and Nasdaq shall not use Distributor's name in any way that would infringe upon such name and shall not use the name in any advertising or marketing materials, without Distributor's prior written consent, which consent may be withheld in Distributor's sole discretion, or subject to another agreement between the parties. Nasdaq acknowledges and agrees that Distributor has proprietary rights in certain trademarks, servicemarks, copyrights or patents, registered or unregistered, and Nasdaq shall not use these trademarks, servicemarks, copyrights or patents, registered or unregistered, in any way that would infringe upon such marks, copyrights or patents.

**18. SUBSEQUENT PARTIES; LIMITED RELATIONSHIP.**

Nothing in this Agreement, express or implied, is intended to or shall (a) confer on any person other than the parties hereto, or their respective permitted successors or assigns, any rights to remedies under or by reason of this Agreement; (b) constitute the parties hereto partners or participants in a joint venture; or (c) appoint one party the agent of the other.

**19. ENTIRE AGREEMENT.**

All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders, if and where applicable. The use of the singular in the Agreement shall include the plural, and vice versa. Section headings are included for convenience only and are not to be used to construe or interpret this Agreement. All references contained herein to sections or subsections shall refer to the sections or subsections of this Agreement, unless specific reference is made to the sections or subsections of another document.

**20. CLAIM TIME LIMIT.**

In no event shall any claim, dispute, controversy or other matter arising pursuant to this Agreement (other than claims for financial non-compliance arising from an audit performed in accord with the provisions of Section 7 above) be made against Nasdaq, Distributor, or any person claiming by or through either Nasdaq or Distributor, later than three (3) years after the claim, dispute, controversy or other matter in question has arisen.

**21. WAIVER OF CLAIMS.**

Nasdaq, Distributor, any person claiming by or through Nasdaq and/or Distributor and their respective employees, directors, and other agents expressly waive any claims, disputes, controversies, and other matters not brought within the period set forth above.

**22. AMENDMENT; WAIVER; SEVERABILITY, LOCAL LAW.**

**(a)** Except as may otherwise be set forth in this Agreement, Nasdaq may alter any term or condition of this Agreement on ninety (90) days notice to Distributor, and any use of the Information after such date is deemed acceptance of the new term or condition. The means of notifying Distributor of such new term or condition may include, but not be limited to, emailing such term or condition to Distributor or posting such alteration on the Nasdaq Trader website or a successor site shall be as per the Summary, Section 8. No failure on the part of Nasdaq or Distributor to exercise, no delay in exercising, and no course of dealing with respect to any right, power, or privilege under the Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power, or privilege preclude any other or further exercise thereof or the exercise of any other right, power, or privilege under this Agreement.

**(b)** Nasdaq will respect local banking legislation or other government legislation that Distributor is legally obligated to comply. Further, if any of the provisions of this Agreement, or application thereof to any individual, entity or circumstance, shall to any extent be held invalid or unenforceable, the remainder of this Agreement, or the application of such terms or provisions to individuals, entities, or circumstances other than those as to which they are held invalid or unenforceable, shall not be affected thereby and each such term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

**(c)** The parties shall not commit, authorize or permit any action which would cause either party and/or any of its Affiliates to be in violation of any applicable anti-bribery law or regulation. Each party agrees that it will neither offer or give, or agree to give, to any employee, representative or third party acting on behalf of the other party, nor accept, or agree to accept from any

employee, representative or third party acting on behalf of the other Party, any unlawful payment, compensation or remuneration, be it monetary or other thing of value, in connection with the negotiation, execution, conclusion, or the performance of this Agreement. The parties shall promptly notify each other if they become aware of any breach of this provision, and either party may terminate this Agreement with immediate effect in the event of such a breach by the other party.

**(d)**  In the event of a conflict between these Terms and Conditions and the Summary or the Introduction and Instructions, the terms of these Terms and Conditions shall apply.

### 23.  SURVIVAL OF PROVISIONS.

The terms of Sections 1, 4 (i), 5, 6, 7, 11, 12, 13, 15, 16, 17, 18, 20 and 21 shall survive the completion of performance or any termination of this Agreement.

### 24.  COUNTERPARTS.

This Agreement may be executed in one or more counterparts, which shall each be considered an original, but all of which together shall constitute one and the same Agreement.

# Nasdaq Global Data Agreement Appendix 1

**1. INFORMATION.** Nasdaq offers Information from the following Nasdaq Markets and may offer Information from other Nasdaq Markets or other entities, a full list of which is available on **www.NASDAQTrader.com**. Your receipt of data from another Nasdaq Market, even if not set forth below, will constitute your acceptance of this Agreement's applicable terms and conditions with respect to such data.

| Legal Entity and Principal Place of Business | Entity Type | Funds | Governing Laws |
|---|---|---|---|
| Nasdaq, Inc. 151 W. 42nd Street New York, New York 10036 USA | Delaware Corporation | US Dollars | This Agreement shall be construed and enforced in accordance with, and the validity and performance hereof shall be governed by, the laws of the State of New York, without reference to principles of conflicts of laws thereof. Any dispute that cannot be amicably settled that arises out of this Agreement shall be referred to arbitration and shall be conducted in accordance with the rules of the American Arbitration Association. All such proceedings shall be held in New York City, NY, and shall be conducted in the English language, which shall also be the language of the documents. |
| NASDAQ Information LLC 151 W. 42nd Street New York, New York 10036 USA | Delaware Corporation | US Dollars | This Agreement shall be construed and enforced in accordance with, and the validity and performance hereof shall be governed by, the laws of the State of New York, without reference to principles of conflicts of laws thereof. Any dispute that cannot be amicably settled that arises out of this Agreement shall be referred to arbitration and shall be conducted in accordance with the rules of the American Arbitration Association. All such proceedings shall be held in New York City, NY, and shall be conducted in the English language, which shall also be the language of the documents. |
| NASDAQ Nordic LTD Fabianinkatu 14, FI-00131 Helsinki FINLAND | Finnish company | Euros | This Agreement shall be governed by and construed in accordance with the laws of Finland. Any dispute that cannot be amicably settled that arises out of this Agreement shall be referred to arbitration and shall be conducted in accordance with the rules for expedited arbitrations of the Arbitration Institute of the Stockholm Chamber of Commerce. All such proceedings shall be held in Stockholm, and shall be conducted in the English language, which shall also be the language of the documents. |
| NASDAQ BX 151 W. 42nd Street New York, New York 10036 USA | Delaware Corporation | US Dollars | This Agreement shall be construed and enforced in accordance with, and the validity and performance hereof shall be governed by, the laws of the State of New York, without reference to principles of conflicts of laws thereof. Any dispute that cannot be amicably settled that arises out of this Agreement shall be referred to arbitration and shall be conducted in accordance with the rules of the American Arbitration Association. All such proceedings shall be held in New York City, NY, and shall be conducted in the English language, which shall also be the language of the documents. |
| NASDAQ PHLX FMC Tower, Level 8 2929 Walnut Street Philadelphia, PA 19104 USA | Delaware Corporation | US Dollars | This Agreement shall be construed and enforced in accordance with, and the validity and performance hereof shall be governed by, the laws of the State of New York, without reference to principles of conflicts of laws thereof. Any dispute that cannot be amicably settled that arises out of this Agreement shall be referred to arbitration and shall be conducted in accordance with the rules of the American Arbitration Association. All such proceedings shall be held in New York City, NY, and shall be conducted in the English language, which shall also be the language of the documents. |

| | | | |
|---|---|---|---|
| NASDAQ Oslo ASA<br><br>Vollsveien 19<br>PO Box 373<br>NO-1326 Lysaker<br>NORWAY | Norwegian Company | Euros | This Agreement shall be governed by and construed in accordance with the laws of Norway. Any dispute that cannot be amicably settled that arises out of this Agreement shall be referred to arbitration and shall be conducted in accordance with the Norwegian Arbitration Act 2004. Unless the parties agree otherwise such proceedings shall be held in Oslo, and shall be conducted in the English language, which shall also be the language of the documents. The proceedings as well as the verdict shall be confidential between the parties, except for information which a party is required to disclose by virtue of law or governmental order. |

## 2. Requirements of Self-Regulatory Organization; Actions To Be Taken In Fulfillment of Statutory Obligations.

**(a)** Distributor acknowledges that in the United States: (i) several of the Nasdaq Markets are registered with the SEC as national securities exchanges pursuant to Section 6 of the Act, and FINRA is registered with the SEC as a national securities association pursuant to 15A of the Act; (ii) FINRA and Nasdaq have a statutory obligation to protect investors and the public interest, and to ensure that quotation information supplied to investors and the public is fair and informative, and not discriminatory, fictitious or misleading; (iii) Section 19(g)(1) of the Act mandates that FINRA and Nasdaq comply with the Nasdaq Requirements; (iv) Nasdaq has jurisdiction to enforce compliance with certain of the Nasdaq Requirements; (v) FINRA has jurisdiction to enforce compliance with certain of the Nasdaq Requirements; and (vi) Nasdaq is obligated to offer terms that are not unreasonably discriminatory between Distributors, subject to applicable Nasdaq Requirements. Accordingly, Distributor agrees that Nasdaq, when required to do so in fulfillment of its statutory obligations, may, temporarily or permanently, unilaterally condition, modify or terminate the right of any or all individuals or entities to receive or use the Information. Nasdaq shall undertake reasonable efforts to notify Distributor of any such condition, modification or termination, and Distributor shall promptly comply with any such notice within such period of time as may be determined in good faith by Nasdaq to be necessary, consistent with its statutory obligations. Any person that receives such a notice shall have available to it such procedural protections as are provided to it by the Act and the applicable rules thereunder.

**(b)** Distributor acknowledges that, in Europe, Nasdaq is obligated to offer terms that are not unreasonably discriminatory between Distributors, subject to applicable Nasdaq Requirements. Nasdaq when required to do so in fulfillment of the its statutory obligations, may, temporarily or permanently, unilaterally condition, modify or terminate the right of any and all individuals or entities to receive or use the Information. NASDAQ shall notify the Distributor of any such condition, modification or termination, and the Distributor shall promptly comply with any such notice within such period of time as may be determined in good faith by Nasdaq to be necessary, consistent with its statutory obligations. If the Distributor receives such notice, it will have available to it all procedural protections provided to it by statute and any applicable regulatory rules.

**(c)** If Distributor is a member of a Nasdaq Market, then Distributor expressly acknowledges and agrees that (i) this Agreement does not limit or reduce in any way Distributor's obligations and responsibilities as a member of any applicable Nasdaq Market; (ii) this Agreement does not in any way alter the procedures or standards generally applicable to disciplinary or other actions taken by Nasdaq to enforce compliance with, or impose sanctions for violations of, the Nasdaq Requirements; and (iii) the nonpayment of amounts due under this Agreement could result in the suspension or cancellation of Distributor's membership in a Nasdaq Market in accordance with the Nasdaq Requirements.

# Nasdaq Global Data Agreement Appendix 2

Nasdaq may offer Web Access Information via a Nasdaq website. If Distributor receives such Information, the below terms shall apply.

## 1. DEFINITIONS

**(a)** **"Web Access Information"** means services that enable Distributor to receive certain Information through a Nasdaq website.

**(b)** **"Security Administrator"** means a security contact person designated by Distributor to Nasdaq in writing.

**(c)** **"Security Device"** means any passwords, Internal Recipient identification numbers, certificates or other form(s) of authentication or security used in connection with the Service as defined below. Security Device may include third party software.

**(d)** **"Service"** means any Nasdaq services that enable Distributor to receive Web Access Information.

## 2. SERVICE; DISTRIBUTOR OBLIGATIONS

**(a)** Security Devices may be provided to Distributor in connection with the provision of Service.

**(b)** Distributor shall designate to Nasdaq at least one Security Administrator along with a clear explanation of such a person's scope of authority related to the Service. Nasdaq may request clarification of the Security Administrator or object to the Security Administrator for any reason.

**(c)** Distributor is required to ensure Security Administrators and Internal Subscribers adhere to the Nasdaq Requirements. Distributor shall be responsible, under regulation, contract, tort or otherwise, for all actions or omission of a Security Administrator an Internal Recipient (including those that would have been performed by a Security Administrator or an Internal Recipient had one been named at the time.)

**(d)** Distributor shall not reverse engineer, decode, decompile, attempt to tamper with, evade, discover the method of operations or defeat and Security Device provided for use with the Service. If applicable law authorizes Distributor to perform certain types of reverse engineering or the like and declares unenforceable contractual obligations that conflict with that law, then Distributor may only perform such reverse engineering or the like as is expressly allowed by, and in strict compliance with, such law.

**(e)** Distributor shall comply, at its expense, with all reasonable security specifications or instructions of Nasdaq, in order to prevent the Service from being improperly used or accessed or the Web Access Information from being improperly take from any Recipient's place of business and/or residence of business.

**(f)** If Distributor actually knows or discovers weakness in or about any particular reach of any Security Device provide for use with the Service to the extent such information is not generally known to the public, Distributor shall immediately notify Nasdaq.

## 3. VIRUS NOTIFICATION AND RISK

Distributor acknowledges that it is possible to contract a virus or similar "disease" by using the Internet or material downloaded from it. Websites are inherently not as secure or reliable an environment as computers connected by dedicated lines and have been, in the past vulnerable, to attack by hackers and third parties. Distributor should obtain, use and update virus-checking software routinely when Distributor is using Information or data obtained from the Internet. While Nasdaq cannot assure Distributor that the Service will be virus- or problem-free, Nasdaq will make commercially reasonable efforts to ensure the Service is virus-free. By using the Service, Distributor agrees to assume the risk of any unavailability, interruption, delay, incompleteness or inaccuracy of the Service.

## 4. THIRD PARTY SOFTWARE

Nasdaq may provide Distributor with certain third-party software in connection with Distributors use of the Service. Distributor agrees to use the software only in connection with its use of the Service and agrees to comply with all relevant United States export restrictions. Distributor's sole remedy against Nasdaq for any errors or defects in third-party software (including, but not limited to, intellectual property infringement claims) shall be to cease using such software and return the software to Nasdaq. The third-party software is provided "as is" without warranty of any kind, although Nasdaq may, where applicable, pass through any warranties it obtains from its third-party software suppliers. Nasdaq shall not be liable for any errors or defects in any third-party's software (including claims of infringement).

**Exhibit 2**



# US EQUITIES AND OPTIONS DATA POLICIES

**Under the terms of the Nasdaq Global Data Agreement, Distributors of Nasdaq information must adhere to the following Nasdaq Data Policies. Nasdaq will update these policies periodically, and interim updates will be communicated via Nasdaq Data News.**

## Contents

1. PRICING CLARIFICATIONS ........................................................................................................................ 2

2. TERMINOLOGY & UNIT OF COUNT ......................................................................................................... 3

3. DERIVED DATA ....................................................................................................................................... 6

4. DELAYED DATA ...................................................................................................................................... 6

5. PROFESSIONALS AND NON-PROFESSIONALS ....................................................................................... 12

6. ENTERPRISE LICENSES .......................................................................................................................... 16

7. NON-DISPLAY USAGE POLICY .............................................................................................................. 20

8. UNIT OF COUNT: SYSTEM CLASSIFICATIONS ........................................................................................ 22

A. UP1. DATA FEED ................................................................................................................................... 22

B. UP2. MANAGED DATA SOLUTION [MDS] .............................................................................................. 23

C. CP1. SUBSCRIBER: CONTROLLED DEVICE/ACCESS/USER ...................................................................... 24

D. CP2. HOSTED DISPLAY SOLUTION ........................................................................................................ 24

E. CP3. ENHANCED DISPLAY SOLUTION [EDS] .......................................................................................... 25

F. UNIT OF COUNT: COUNTING GUIDELINES ............................................................................................ 26

9. NET REPORTING: NASDAQ BASIC .......................................................................................................... 26

10. ADMINISTRATION  FEES ..................................................................................................................... 28

11. DOCUMENT UPDATES .......................................................................................................................... 32

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

# 1.  PRICING CLARIFICATIONS

## OVERVIEW

The below clarifications are intended to clarify certain fees within each market. The policies below are in effect unless otherwise noted on the price list published on NasdaqTrader.

| Pricing Clarifications: | |
| --- | --- |
| Distributor Fees | The External Distributor Fee for a data product generally includes the Internal Distributor Fee for that data product, and the Real Time Administrative Fee or Access fee includes the Delayed Administrative Fee for the Information received (for details see NasdaqTrader).<br><br>**EXCEPTIONS:**<br><br>Nasdaq TotalView ITCH FPGA (field programmable gate array): An Internal and External Distributor of Nasdaq TotalView ITCH FPGA must pay both the Internal and External Distributor fee for TotalView ITCH FPGA.<br><br>Distributors looking to recreate the BBO portion of Nasdaq Basic, BX BBO, and/or PSX BBO products from an existing TotalView connection may do so for Display purposes from Nasdaq, BX, and/or PSX TotalView and will be required to submit the Nasdaq BBO from TotalView Form.<br><br>Distributors that distribute Nasdaq Last Sale or Nasdaq Last Sale Plus, but due to redistributor limitations have to receive Nasdaq Basic, must submit the Nasdaq Last Sale / Nasdaq Last Sale (Plus) only Declaration Form. The Distributor acknowledges through this declaration that additional fees will apply if Nasdaq Basic is distributed. |
| Administration Fee | Nasdaq currently assesses an Administration Fee for certain information provided to Distributors both internal and external. Distributors will be invoiced for the appropriate Administration Fee upon approval, please refer to the below links for details:<br><br>U.S. DATA PRODUCTS FEE SCHEDULE<br><br>For Distributors of Nasdaq Information, the Administration Fee varies based on which data sets are received by the Distributor, and whether the data is received on a real-time or delayed basis. All Nasdaq proprietary exchange data received directly from Nasdaq is deemed real-time information; data received by a Redistributor may be considered delayed. |
| BX Options | One Distributor Fee allows access to both the BX Options Depth of Market and BX Options Top of Market feed, while Subscriber fees are assessed individually for each feed. |
| The Nasdaq Options Market | The unit of count for the Nasdaq Options Market data feeds is based on a per Subscriber basis and not per User. Every device should be counted according to the policy definition for a Subscriber. |

| | |
|---|---|
| Net Order Imbalance Snapshot (NOIS) | Nasdaq exempts Recipients of Net Order Imbalance Snapshot (NOIS) from the Nasdaq Subscriber fees and Distributor fees for NOIS/Nasdaq TotalView. NOIS consists of specifically scheduled messages as a subset of the Order Imbalance Indicator. The messages as well as the timing of messages are optimized for newswire services.  Please contact Nasdaq to obtain this service or to discuss alternate use cases. |
| Nasdaq Data-On-Demand | Nasdaq prohibits external distribution of Nasdaq Data-On-Demand data unless distributed via a controlled product. |

# 2. TERMINOLOGY & UNIT OF COUNT

## OVERVIEW

Except where specifically detailed otherwise in this policy document, distribution of Nasdaq Information is to be measured, controlled and recorded by using the Interrogation Device or Subscriber as the Unit of Count.

| Terminology | Definition | Unit of count |
|---|---|---|
| Subscriber also referred to as Interrogation Device, Controlled Device, Device, or Access | A device, computer terminal, automated service, or unique user identification and password combination that is not shared and prohibits simultaneous access, and which is capable of accessing Exchange Information; "Interrogation Device," "Device" or "Access" have the same meaning as Subscriber. For any device, computer terminal, automated service, or unique user identification and password combination that is shared or allows simultaneous access, Subscriber shall mean the number of such simultaneous accesses. | The Number of physical Devices or the Number of Unique User IDs and Password combinations that are not shared by multiple people and cannot simultaneously log-on with multiple instances or to multiple Devices.<br><br>Distributors are to report the total number of Subscribers with the potential to access the Information, unless the Distributor is able to technically track actual usage for each Subscriber. |
| Per Query | Retrieval by a Subscriber of Nasdaq Information that is updated with action by Subscriber; each unrequested or pushed update of price(s) or quote(s) must be recorded (see Pricing clarifications above for additional details) | Any displayed quote requested or pushed |
| Direct Access | a telecommunications interface with Nasdaq for receiving Nasdaq data or receiving a Nasdaq Data Feed (either raw or normalized) within the Nasdaq co-location facility or receiving Nasdaq data via an Extranet access provider or other such provider that is fee-liable under Equity 7, Section 125. | Equipment Configurations or Direct Circuit Connections; and Data Feed Subscribers |
| Data Feed | Any uncontrolled transmission of Nasdaq Information in which the Distributor does not control both the entitlements and the display of the Information. | The number of Data Feed Subscriber(s) |
| User | A natural person that receives Exchange Information. | Each natural person |

Version 2.6

| Website | One or more public internet uniform resource locator(s) (URL) with a single commercial brand or identity | Each unique Website with access to Nasdaq Information. Nasdaq reserves the right to determine whether any URL or group of URLs should be regarded as separate Websites for fee purposes. |
| --- | --- | --- |
| Delay Interval | A period of time after which Information becomes Delayed Information, as specified by Nasdaq. Please refer to the following pages for the Delay Intervals. | Some products are eligible for a Delay Interval, and after such time the data may be fee-liable or free, depending upon the product. Note that Nasdaq does not offer reduced pricing for all products, some products are listed as not eligible for a Delay Interval below, and the Real-Time fees apply. |
| Per Television Household | A residential address at which a "Household" is able to access a broadcast with Nasdaq Information. Household populations must be validated by a third-party vendor or ratings agency approved by Nasdaq, at Nasdaq's sole discretion. | The number of households capable of receiving Nasdaq Information. |
| Unique Devices or Per Device | The number of unique Devices accessing a website or mobile application. Distributors restricting access to the Distributor's service may not report on a "per Device" basis; they must select either the "per user" or "per query". Access restriction refers to restrictions on content, not simply a user name and password requirement (please speak with your Nasdaq representative for additional detail). | the number of "Unique Devices" |
| Trading Platform | Any execution platform operated as or by a registered National Securities Exchange (as defined in Section 3(a) (1) of the Exchange Act), an Alternative Trading System (as defined in Rule 300(a) of Regulation ATS), or an Electronic Communications Network (as defined by Rule 600(b) (23) of Regulation NMS). | Per Trading platform |
| Display Usage | Any method of accessing Exchange Information that involves the display of such data on a screen or other mechanism designed for access or use by a natural person or persons. | |

| Non-Display | Any method of accessing Exchange Information other than Display Usage. | The greater of either: (a) the number of Subscribers that can modify the application in real-time, or (b) the number of Devices [usually servers] that receive the information |
|---|---|---|

| **Other Frequently Used Terminology** | | |
|---|---|---|
| Distributor | An entity and its affiliates, as identified in the Nasdaq Global Data Agreement (or any successor agreement), that executes such an Agreement and has access to Exchange Information. | |
| Information or Data | Any data or information that has been collected, validated, processed and/or recorded by the Exchange and made available for transmission relating to: (i) eligible securities or other financial instruments, markets, products, vehicles, indicators or devices; (ii) activities of the Exchange; or (iii) other information or data from the Exchange. Information includes, but is not limited to, any element of information used or processed in such a way that Exchange Information or a substitute for such Information can be identified, recalculated or re-engineered from the processed information. | |
| Data Feed Subscriber | Shall mean any Recipient outside of Distributor that (i) receives Nasdaq Information from the Distributor and (ii) for which the Distributor cannot substantially control Nasdaq Information for the purpose of reporting usage or qualification. | |
| External | Distribution of Nasdaq Information outside of the Distributor's entity as defined by GDA. | |
| Indirect Access | Any method of accessing Exchange Information other than Direct Access. | |
| Recipient | Any natural person, proprietorship, corporation, partnership, or other entity whatever that has access to Exchange Information. | |

# 3. DERIVED DATA

## OVERVIEW

Derived Data is any information generated in whole or in part from Exchange Information such that the information generated cannot be reverse engineered to recreate Exchange Information or be used to create other data that is recognizable as a reasonable substitute for such Exchange Information. In combination with the above definition, examples of Derived Data include but are not limited to (contact your representative for additional clarity):

| swaps | swaptions | volume only data |
| --- | --- | --- |
| spread bets | contracts for difference | volume weighted price (VWAP) |

| Data Product | Description |
| --- | --- |
| Nasdaq U.S. Basic | Derived Data that is created and distributed externally only to Non-Professional Subscribers is fee-liable as part of the payment of the Nasdaq U.S. Basic Derived Data Fee. Derived data distributed to Professional Subscribers is fee-liable at the regular per Subscriber or User rate. (See Hosted Data Solutions for additional obligations regarding Nasdaq U.S. Basic Derived Data). |
| Nasdaq All US Exchange Information | Derived Data that contains price data is generally fee-liable at the underlying product rates. Distributors of Nasdaq U.S. Information may provide the following single security Derived Data products free of charge:<br><br>• Volume-only Data<br>• Volume-Weighted Price Data |

## NOTES

**Note 1:** Any firm that receives a real-time Data Feed is at least required to pay the Internal Distributor fee for receipt of a real-time Data Feed with Derived Information.

**Note 2:** Single security financial instruments supported by the Exchange or financial instruments that track financial instruments one for one are fee liable at the underlying rates.

**Note 3**: Creation of multiple security information, such as an index, is exempt from subscriber fees. However, the Distributor must report the Non-Display devices; please see the Non-Display policy for guidance on how to report.

# 4. DELAYED DATA

## OVERVIEW

Nasdaq permits Distributors to delay certain Information. Currently, if a data product is eligible for delayed pricing, and the data is delayed as per the Delayed Data Policy, there may not be a charge for the usage of the delayed data, depending upon the product selected. For Distributors providing delayed Information, Nasdaq requires that an appropriate delay message be provided to Subscribers, including wall boards, tickers, mobile devices and audio announcements on voice response services. The delay message must prominently appear on all displays containing Delayed Data, such as at or near the top of the page. In the case of a ticker, the delay message should be interspersed with the market data at least every 90 seconds.

Examples of appropriate delayed messages are as follows:

• "Data Delayed 15 minutes"
• "Data Delayed 24 hours"
• "Del-15", "Data Delayed until Midnight CET"

**DELAY INTERVALS:**

| Data Type | Description |
|---|---|
| Real-Time | Information disseminated prior to the Delay Interval.<br><br>Uncontrolled Products require prior approval. |
| Delayed | Information disseminated after the Delay Interval. Nasdaq currently recognizes the following Delay Intervals, which apply to individual products:<br><br>• 15 minutes<br><br>• 24 hours<br><br>• Midnight Local Time (local time 11:59:59 PM where the information is released)<br><br>• Not Eligible for Delayed Pricing<br><br>Note the Midnight Local Time refers to the time zone where the Information is originally distributed from Nasdaq. |
| End-of-Day | Information from the current day that is disseminated after the market has closed for the current day and after the Delay Interval (unless otherwise noted). |

| | |
|---|---|
| **REAL-TIME DATA** | • Data Disseminated prior to the Delayed Timeframe for any product<br>• Prior Approval Required for Uncontrolled Products |
| **DELAYED TIMEFRAME:**<br>**15 MINUTES** | • Data Disseminated at least 15 minutes after Nasdaq releases the information<br>• Prior Approval Required for Uncontrolled Products |
| **DELAYED TIME FRAME: MIDNIGHT LOCAL TIME**<br>**[Time-Zone Specific]** | • Data Disseminated after midnight local time [11:59:59 PM] where the information is released<br>• No Prior Approval Required for Uncontrolled Products , see Product Specific Notes below for exceptions |
| **DELAY TIMEFRAME:**<br>**24 HOURS** | • Data Disseminated at least 24 hours after Nasdaq releases the information<br>• No Prior Approval Required for Uncontrolled Products , see Product Specific Notes below for exceptions |
| **DELAY TIMEFRAME:**<br>**END-OF-DAY** | • Data Disseminated after market close on the day Nasdaq releases the information **and** after the Delayed Data Timeframe for the associated product<br>• No Prior Approval Required for Uncontrolled Products , see Product Specific Notes below for exceptions |

Version 2.6

Distributor may systematically delay certain information per the specified Delay Interval after which the distribution of the Information may not be fee-liable and may not need to be reported to Nasdaq on a monthly basis.

## DATA FEED AGREEMENTS: END-OF-DAY DATA FEEDS

Typically, Distributors that provide End-of-Day Information, held until after the Delay Interval, if applicable, on an Uncontrolled Product are <u>not</u> currently required to obtain a Nasdaq Global Data Agreement from such Data feed Recipients. Nasdaq's waiver of the agreement requirements does <u>not</u> limit the Distributor's indemnification obligations as per the agreement.

A Distributor that redistributes the following products is currently not required to have the Recipient sign a GDA:
1. Daily List/Fundamental Data

The below table outlines delay times for each respective product. For questions, please contact your Account Manager.

| Product | Product Description | Delay Interval |
|---|---|---|
| The Nasdaq Stock Market | Nasdaq TotalView | Midnight LT |
| | Nasdaq Level 2 | Midnight LT |
| | Nasdaq Basic | 15 Minutes |
| | Nasdaq Last Sale (NLS) | 15 Minutes |
| | NLS Plus | 15 Minutes |
| | NLS-Nasdaq Trades FilterView | 15 Minutes |
| | NLS-TRF Trades FilterView | 15 Minutes |
| | Nasdaq Net Order Imbalance Snapshot (NOIS) | Midnight LT |
| | NOIView FilterView | Midnight LT |
| | Nasdaq MatchView | Per Exchange |
| | Nasdaq TotalView (Glimpse) | Midnight LT |
| | NOIView FilterView | Midnight LT |
| BX | BX TotalView [ITCH, GLIMPSE] | Midnight LT |

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| | | |
|---|---|---|
| | BX Basic | 15 Minutes |
| | BX Last Sale (BLS) | 15 Minutes |
| | BX TotalView [GLIMPSE] | Midnight LT |
| | BX Historical ITCH | Not Eligible |
| | BX MatchView | Per Exchange |
| PSX | PSX TotalView [ITCH, GLIMPSE] | Midnight LT |
| | PSX Basic | 15 Minutes |
| | PSX Last Sale (PLS) | 15 Minutes |
| | PSX Historical ITCH | Not Eligible |
| | PSX MatchView | Per Exchange |
| | PSX Glimpse | 24 hours |
| Nasdaq Web-Based Reports | Nasdaq Historical TotalView-ITCH | Not Eligible |
| | BX Historical TotalView-ITCH | Not Eligible |
| | PSX Historical TotalView-ITCH | Not Eligible |
| | Nasdaq Data-On-Demand | Not Eligible |
| | Nasdaq Market Replay | Not Eligible |
| | Nasdaq Daily List | 24 hours |
| | Nasdaq Short Interest Report | Not Eligible |
| | Nasdaq Short Sale Volume Reports | 24 hours |
| | Nasdaq Fundamental Data | 24 hours |

Version 2.6

| | | |
|---|---|---|
| | Nasdaq Daily Share Volume | Not Eligible |
| | Historical PHLX Orders | Not Eligible |
| | Historical ITTO | Not Eligible |
| | PHLX Options Trade Outline (PHOTO) Historical Intraday | Not Eligible |
| | PHLX Options Trade Outline (PHOTO) Historical End-of-Day | Not Eligible |
| | Nasdaq Options Trade Outline (NOTO) Historical Intraday | Not Eligible |
| | Nasdaq Options Trade Outline (NOTO) Historical End-of-Day | Not Eligible |
| | Nasdaq ISE Open/Close Trade Profile Historical Intraday | Not Eligible |
| | Nasdaq ISE Open/Close Trade Profile Historical End-of-Day | Not Eligible |
| | Nasdaq GEMX Open/Close Trade Profile Historical Intraday | Not Eligible |
| | Nasdaq GEMX Open/Close Trade Profile Historical End-of-Day | Not Eligible |
| PHLX | PHLX Depth of Market | Midnight LT |
| | PHLX Orders | Midnight LT |
| | Top Of PHLX Options (TOPO) | Midnight LT |
| | Top Of PHLX Options (TOPO) Plus Orders | Midnight LT |
| | PHLX Options Trade Outline (PHOTO) Intraday | Not Eligible |
| | PHLX Options Trade Outline (PHOTO) End-of-Day | Not Eligible |
| | PHLX Historical PHLX Orders | Not Eligible |
| | PHLX PHOTO Historical | Not Eligible |

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| | | |
|---|---|---|
| The Nasdaq Options Market | Best of Nasdaq Options (BONO) | 15 Minutes |
| | Nasdaq Options Trade Outline (NOTO) | Not Eligible |
| | Nasdaq ITCH To Trade Options (ITTO) [ITTO, ITTO GLIMPSE] | Midnight LT |
| | Options-Nasdaq Options Trade Outline (NOTO) Intraday | Not Eligible |
| | Options-NOTO End-of-Day | Not Eligible |
| BX Options | BX Options Depth of Market (BX Depth) | Midnight LT |
| | BX Top of Market (BX Top) | 15 Minutes |
| Nasdaq ISE | Nasdaq ISE Depth of Market | Midnight LT |
| | Nasdaq ISE Top Quote | 15 Minutes |
| | Nasdaq ISE Order | Midnight LT |
| | Nasdaq ISE Spread | 15 Minutes |
| | Nasdaq ISE Trade | 15 Minutes |
| | Nasdaq ISEE Select XML Feed | 15 Minutes |
| | Nasdaq ISE Open/Close Trade Profile Intraday | Not Eligible |
| | Nasdaq ISE Open/Close Trade Profile End-of-Day | Not Eligible |
| Nasdaq GEMX | Nasdaq GEMX Depth of Market | Midnight LT |
| | Nasdaq GEMX Top Quote | 15 Minutes |
| | Nasdaq GEMX Order | Midnight LT |
| | Nasdaq GEMX Trade | 15 Minutes |

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| | Nasdaq GEMX Open/Close Trade Profile Intraday | Not Eligible |
|---|---|---|
| | Nasdaq GEMX Open/Close Trade Profile End-of-Day | Not Eligible |
| Nasdaq MRX | Nasdaq MRX Depth of Market | Midnight LT |
| | Nasdaq MRX Top Quote | 15 Minutes |
| | Nasdaq MRX Order | Midnight LT |
| | Nasdaq MRX Trade | 15 Minutes |

*Please be advised that trade types "OTC-Loan Payment" and "OTC-Primary Transaction" are not transaction data and not included in the delayed interval.

# 5. PROFESSIONALS AND NON-PROFESSIONALS

## DEFINITIONS

| Non-Professional Subscriber | Any natural person who is **NOT**:<br><br>(a) registered or qualified in any capacity with the SEC, the Commodities Futures Trading Commission, any state securities agency, any securities exchange or association or any commodities or futures contract market or association;<br><br>(b) engaged as an "investment advisor" as that term is defined in Section 202(a)(11) of the Investment Advisors Act of 1940 (whether or not registered or qualified under that Act); or<br><br>(c) employed by a bank or other organization exempt from registration under federal or state securities laws to perform functions that would require registration or qualification if such functions were performed for an organization not so exempt. |
|---|---|
| Professional Subscriber | All other persons who do **not** meet the definition of Non-Professional User. |

**Person** — Any natural person, proprietorship, corporation, partnership or other entity whatsoever.

**Subscriber** — When it appears alone, the word "Subscriber" encompasses all Non-Professional and Professional Subscribers. All Subscribers are deemed to be Professional unless they are qualified as Non-Professional Subscribers.

**Non-Professional Subscriber** — For the Non-Professional Subscriber, Information is licensed only for personal use. By representing that a Subscriber is a Non- Professional Subscriber, or by continuing to receive Information at a Non-Professional rate, the Subscriber is affirming that it meets the definition of Non-Professional Subscriber as set forth above. A Non-Professional Subscriber shall comply promptly with any reasonable request from Nasdaq for information regarding the Non-Professional Subscriber's receipt, processing, display and redistribution of Information.

**Professional Subscriber** — For the Professional Subscriber, Information is licensed for the internal business use of that Subscriber. Professional Subscribers may, on a non-continuous basis, furnish limited amounts of Information to customers in written advertisements, correspondence or other literature or during voice telephonic conversations not entailing computerized voice, automated information inquiry systems or similar technologies. Upon request, a Professional Subscriber shall make its premises available to Nasdaq for physical inspection of the Subscriber's service or of the Subscriber's use of the Information (including review of any records regarding use of or access to the Information and the number and locations of all devices that receive Information), at all reasonable times, upon reasonable notice, to ensure compliance with this policy. Note, all Internal use by an organization is Professional.

From time to time, the category of a particular subscriber may change. This would occur, for example, when a Professional retires and no longer provides services in a Professional capacity, as discussed below. Distributors should update their categorization of particular Subscribers as either Professional or Non-Professional on a regular basis to ensure accurate reporting.

## GUIDANCE FOR NON-PROFESSIONALS: NATURAL PERSONS

**The chart below provides specific examples of Professional and Non-Professional usage:**

| Affiliation | Licensee | Usage | Status |
|---|---|---|---|
| Securities Professional (employee/contractor/subcontractor) | Organization or Individual | Business purposes or personal reasons | Professional |
| Non-securities Professional (employee/contractor/subcontractor) | Organization | Business purposes or personal reasons | Professional |
| Non-securities Professional associated with a Non-commercial organization | Individual | Business purposes | Professional |
| Non-securities Professional | Individual | Personal reasons | Non-Professional |
| Non-securities Professional associated with a Non-commercial organization | Individual | Personal reasons | Non-Professional |

### Subcontractors/Independent Contractors:

Nasdaq's definition of Non-Professional Subscriber requires that the Non-Professional Subscriber be a natural person. Subcontractors and independent contractors signing in their capacity as a subcontractor or independent contractor of the contracting firm are not natural persons. Individuals maintaining an employment, business or commercial relationship are considered extensions of the organization. Examples of organizational use include, but are not limited to, subcontractors, independent contractors, profit sharing partners, commission sharing partners and/or any use involving an employment relationship.

### Trading Authorization:

Nasdaq's definition of Non-Professional Subscriber requires Distributors to separately determine the Professional or Non-Professional status of each individual accessing Nasdaq Information. In some instances, multiple individuals may have access to a single account. Distributors must separately report each Subscriber accessing the account (unless the account is shared using the same user id and password). In some cases, Distributors provide access to the account to a person designated by the Subscriber, via a Trading Authorization Form or a similar document. For each person designated by the Subscriber, the Distributor must report such persons as Non-Professional or Professional, as applicable. Please note that the account itself cannot be considered a Non-Professional Subscriber, nor can any staff paid to support the account activities be considered a Non-Professional Subscriber (i.e., registered investment advisors, attorneys, accountants,etc.).

Version 2.6

## GUIDANCE FOR NON-PROFESSIONALS: ORGANIZATIONS

Individual Subscribers associated with certain organizations may be able to access Non-Professional rates. To obtain the Non-Professional rates for qualifying Subscribers associated with non- commercial organizations, please follow the guidance below, and contact your account manager if you have questions.

Individuals associated with certain non-commercial organizations (i.e., family investment trusts, investment clubs, etc.) may be permitted to access Nasdaq Information at Non-Professional rates. Note that the organization itself cannot be considered a Non- Professional Subscriber, nor can any staff paid to support the organization's activities (i.e., attorneys, accountants, administrative staff, etc.) For example, if the organization is established exclusively to manage accounts of an individual or the individual's immediate family, the Subscriber associated with that organization may qualify for Non-Professional rates. In addition, non-commercial organizations solely owned by an individual and members of their immediate family (who themselves are Non-Professionals) utilizing the market data solely for their own personal investing may qualify for Non-Professional rates.

Details regarding specific instances of non-commercial organizational use are below:

**Trusts**

Certain individuals associated with Trusts may qualify for Nasdaq Information at Non-Professional rates, as shown in the following charts.

| Questions regarding Trusts | Discussion |
| --- | --- |
| May the trust itself qualify as a Non-Professional? | No, the Trust is an organization, and by definition only natural persons can qualify as Non-Professionals. A single, unpaid natural person associated with the Trust, who qualifies as a Non-Professional Subscriber, may be reported as a Non-Professional Subscriber if the reporting includes the name of the person. The name of the Trust may also be reported, but a report that includes only the name of the Trust would be qualified as a Professional. |
| May a trustee qualify as a Non-Professional? | Yes, if the Trustee is an unpaid natural person who qualifies as a Non-Professional Subscriber. |
| May trustees who receive compensation qualify as Non-Professionals? | No. |
| May trustees who receive professional assistance qualify as Non-Professionals? | No. |
| May a beneficiary of the trust qualify as a Non-Professional? | Yes, if the Beneficiary is an unpaid natural person who qualifies as a Non-Professional Subscriber. |
| May multiple beneficiaries qualify as Non-Professionals? | Yes, if the Beneficiaries are unpaid natural persons who qualify as Non-Professional Subscribers. |

**Investment Clubs**

Certain individuals associated with Investment Clubs may access Nasdaq Information at Non-Professional rates as shown in the below chart.

| Questions regarding Investment Clubs | Discussion |
|---|---|
| May Investment Club members qualify as Non-Professionals? | Yes, if the Investment Club member is an unpaid natural person who qualifies as a Non-Professional Subscriber. |

**Retired and Inactive Professionals**

Certain Retired and Inactive Professionals may access Nasdaq Information at Non-Professional rates as shown in the below chart.

| Questions regarding Retired and Inactive Professionals | Discussion |
|---|---|
| Do Retired Professionals qualify as Non-Professionals? | Yes, Retired Professionals no longer providing services in a Professional capacity may qualify as Non-Professionals if listed as Not-Registered with FINRA. To continue to receive the Non-Professional rates, Subscribers must re-verify their Non-Professional status semi- annually. |
| Do Non-working Professionals qualify as Non-Professionals? | Yes, Professionals no longer providing services may qualify as Non-Professionals if listed as Not-Registered with FINRA. To continue to receive the Non-Professional rates, Subscribers must re-verify their Non-Professional status semi-annually. |

**Large Traders**

Certain Large Traders may access Nasdaq Information at Non-Professional rates as shown in the below chart.

| Questions regarding Large Traders | Discussion |
|---|---|
| Are Large Traders always qualified as Professionals? | If a large trader otherwise meets the definition of "Non-Professional Subscriber," the large trader does not lose his or her "Non-Professional Subscriber" status merely because he or she falls within SEC Rule 13h-1(a)'s definition of "large" trader. |

Version 2.6

# 6.    ENTERPRISE LICENSES

## OVERVIEW

The Enterprise License options may not be available to all firms. Distributors may still be liable for the applicable distributor fees. For some products, there may be a minimum subscription length. Fees outlined below are monthly and apply per Distributor unless otherwise noted. For additional information, please contact your Account Manager for details.

| Enterprise # | Enterprise Description |
|---|---|
| Nasdaq Stock Market 1 | **U.S. NASDAQ DEPTH [TOTALVIEW/LEVEL 2] DISPLAY PROFESSIONAL AND NON-PROFESSIONAL [INTERNAL & EXTERNAL]**: Permits Distributor to provide Nasdaq Depth through any electronic system approved by Nasdaq to Professional and Non-Professional Subscribers who are natural persons and with whom the broker-dealer has a brokerage relationship. In addition to the Enterprise License fee, the applicable subscriber fees still apply.<br><br>• Distributors are exempt from payment of the Enhanced Display Solutions Distributor Fee.<br><br>Price: 25,000 USD PER MONTH + Subscriber fees of 60 USD or 9 USD per month for professionals or non-professionals respectively. |

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| Nasdaq Stock Market 2 | **U.S. NASDAQ DEPTH [TOTALVIEW/LEVEL 2] DISPLAY PROFESSIONAL AND NON-PROFESSIONAL[EXTERNAL]:**<br><br>Permits Distributor to provide Nasdaq Depth through any electronic system approved by Nasdaq to an unlimited number of Professional and Non-Professional Subscribers who are natural persons and with whom the broker-dealer has a brokerage relationship. Use of the data obtained through this license by any Professional Subscriber shall be limited to the context of the brokerage relationship between that person and the broker-dealer. A Professional Subscriber who obtains data under this subsection may not use that data within the scope of any professional engagement. A separate enterprise license would be required for each discrete electronic system that is approved by Nasdaq and used by the broker-dealer. The enterprise license would allow distribution through the approved electronic system but would not cover distribution through any Distributor other than the broker-dealer obtaining the license and any approved system. The broker-dealer must also report the number of Subscribers receiving Nasdaq Depth under the license to Nasdaq at least once per calendar year.<br><br>This license entitles Distributors to an exemption of the fees related to the Enhanced Display Solutions (Distributor and Subscriber Fees).<br><br>Price: 500,000 USD |
|---|---|
| Nasdaq Stock Market 3 | **U.S. NASDAQ DEPTH [TOTALVIEW/ LEVEL 2] NON-DISPLAY PROFESSIONAL [INTERNAL]:**<br>Permits Distributor to include unlimited use in internal Non-Display applications for Nasdaq Depth. No external use is permitted under this license.<br><br>Price: 75,000 USD |
| Nasdaq Stock Market 4 | **U.S. NASDAQ DEPTH ENHANCED DISPLAY SOLUTION [EXTERNAL]:** Permits Distributor to distribute to an unlimited number of Professional Enhanced Display Solutions Subscribers for a monthly fee of $76 for TotalView/Level 2, Notwithstanding the Distributor fees for the right to offer EDS solutions.<br><br>Price: 33,500 USD + Subscriber fees of 76 USD |
| Nasdaq Stock Market 5 | **U.S. NASDAQ BASIC [INTERNAL & EXTERNAL]:** Permits Distributor to provide Nasdaq Basic through any electronic system approved by Nasdaq to an unlimited number of Professional and Non- Professional Subscribers who are natural persons and with whom the broker-dealer has a brokerage relationship. A broker-dealer that purchases this enterprise license will also have the right to distribute Nasdaq Basic under the terms set forth under Nasdaq Basic Digital Media Enterprise License. Use of the data obtained through this license by any Professional Subscriber shall be limited to the context of the brokerage relationship between that person and the broker-dealer, except that a Distributor may make Nasdaq Basic data obtained through this license available to up to and including 4,500 internal Subscribers operating on an electronic system approved by Nasdaq, which may be used by Professional Users employed by the broker-dealer in support of brokerage services to investors; any distribution to over 4,500 internal Subscribers, or any usage by Professional Users not in support of brokerage services to investors on an approved |

platform, would be subject to any applicable fees set forth on Nasdaqtrader.com. A Professional User who obtains Nasdaq Basic data through a brokerage relationship with the broker-dealer may not use that data within the scope of any professional engagement. A separate enterprise license would be required for each discrete electronic system that is approved by Nasdaq and used by the broker-dealer. The enterprise licensewould allow distribution through the approved electronic system, but would not cover distribution through any Distributor other than the broker-dealer obtaining the license and any approved system The broker-dealer must also pay the Distributor Fee for Nasdaq Basic and report the number of Subscribers receiving Nasdaq Basic under this license that are used by: (i) Professional and Non-Professional Users in a brokerage relationship at least once per calendar year; and (ii) Professional Users employed by the broker-dealer on a monthly basis.

Price: 100,000 USD

| | |
|---|---|
| Nasdaq Stock Market 6 | **U.S. NASDAQ BASIC PROFESSIONAL [INTERNAL]:** Permits Distributor who is a broker-dealer to distribute Nasdaq Basic to Internal Subscribers. The broker-dealer must obtain a separate enterprise license for each External Distributor that controls display of the product if it wishes suchExternal Distributor to be covered by an enterprise license rather than per-Subscriber fees. A broker-dealer that purchases an enterprise license under this provision may also receive, at no additional charge, access to Nasdaq Last Sale data for its own stock price and the stock price of up to ten of its competitors or peers, for display use on the broker-dealer's internal website. Distributors are required to apply for or cancel this Enterprise License in writing with their AccountManager. Monthly summary reporting may be required for specific setups.<br><br>Price: 155,000 USD |
| Nasdaq Stock Market 7 | **U.S. NASDAQ LAST SALE [EXTERNAL]:** A Distributor may purchase an enterprise license to distribute Nasdaq Last Sale data to the General Investing Public for Display Usage to an unlimited number of Users or Devices, including, but not limited to, television distribution. To be eligible for the enterprise license, Nasdaq Last Sale must be distributed on platform(s) controlled by the Distributorand pre-approved by Nasdaq as providing the Distributor with a reasonable basis to conclude that all Users of such Information are either Non-Professionals or Professionals whom the Distributor has no reason to believe are using Nasdaq Last Sale in their professional capacity. A Distributor thatinadvertently exceeds $41,500 in Per User, Per Query or Per Device fees may purchase the enterprise license for the month(s) in which fees exceeded $41,500 without pre-approval.<br><br>Price: 41,500 USD |
| Nasdaq Stock Market 8 | **U.S. NASDAQ BASIC, TOTALVIEW and NLS [INTERNAL AND EXTERNAL]:**<br><br>Permits Distributor who is a broker-dealer or an Investment Adviser to pay a monthly enterprise license fee of $600,000 to distribute, for Display Usage only, Depth-of-Book data and Nasdaq Basic |

Version 2.6

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| | |
|---|---|
| | to an unlimited number of internal and external Recipients, to be used only in the context of a brokerage relationship with a broker-dealer or an engagement with an Investment Adviser, as well as the right to distribute Nasdaq Basic under the terms set forth under Nasdaq Basic Digital Media Enterprise License. Platforms distributing such information shall be pre-approved by the Exchange as reasonably designed to meet the requirements of the license including but not limited to security measures to prohibit unauthorized distribution. The monthly enterprise license fee shall be in lieu of Subscriber Fees for Depth-of-Book data, User Fees for Nasdaq Basic, Distribution Modelfees for the General Investing Public for NLS, and NLS Plus fees, whether such fees are paid directly to the Exchange or indirectly through another Distributor.<br><br>Alternatively, a Distributor eligible for this enterprise license may purchase a full twelve months of the license in advance for a monthly fee of $500,000, which may be paid in monthly installments. After the initial period, the annual enterprise license shall automatically renew for additional periods of twelve (12) months unless either Party provides notice of its intent not to renew the service a minimum of ninety (90) days prior to the end of the existing license. Notwithstanding any other provision of the policy of the Global Data Agreement, neither Party shall have the right to terminate the service for convenience, including pursuant to Section 8(iii) of the Summary to the Global Data Agreement.<br><br>Price: 500,000 USD with twelve-month commitment; or 600,000 USD month to month |
| Nasdaq Stock Market 9 | **NASDAQ MARKET REPLAY [INTERNAL OR EXTERNAL]:** Permits Distributor to distribute the data internally or externally to Professional or Non-Professional subscribers.<br><br>Price: 25,000 USD |
| Nasdaq Stock Market 10 | Reserved |
| Nasdaq Stock Market 11 | **U.S. NASDAQ BASIC DIGITAL MEDIA LICENSE DISPLAY [EXTERNAL]:** Permits a Distributor to distribute all or part of Nasdaq Basic for Display Usage to the general investing public. Information may be made available via television, websites, mobile devices, or any other unrestricted means of transmission for Display Usage, to an unlimited number of Users. Data may only be used for informational and non-trading purposes. To be eligible for the enterprise license, Nasdaq Basic may only be distributed on a platform that is pre-approved by the Exchange as providing the External Distributor with a reasonable basis to conclude that all Users of such Information are either Non-Professionals or Professionals whom the Distributor has no reason to believe are using Nasdaq Basic in their professional capacity.<br><br>Price: 100,000 USD |
| Nasdaq Options Market 1 | **NASDAQ ITCH-TO-TRADE OPTIONS (ITTO) AND/OR BEST OF NASDAQ OPTIONS (BONO) NON-DISPLAY [INTERNAL]:** Permits Distributor to include unlimited internal non-display use of ITTO and BONO separately or combined.<br><br>Price: 10,000 USD |

Version 2.6

| PSX 1 | **U.S. NASDAQ PSX DEPTH [PSX TOTALVIEW] NON-DISPLAY PROFESSIONAL [INTERNAL]:** Permits distributor unlimited use in Internal non-display applications for PSX TotalView [Nasdaq, NYSE, and Regional Issues]. <br><br> Price 17,000 USD |
|---|---|
| BX 1 | **U.S. NASDAQ BX DEPTH [BX TOTALVIEW] NON-DISPLAY PROFESSIONAL [INTERNAL]:** Permits Distributor to include unlimited use in Internal non-display applications for BX TotalView [Nasdaq, NYSE, and Regional Issues]. <br> Price: 20,000 USD |
| BX Options 1 | **BX OPTIONS DEPTH OF MARKET NON-DISPLAY [INTERNAL]:** Permits Distributor to make use of the data via Non-Display applications for internal use only. <br><br> Price: 2,500 USD |
| BX Options 2 | **BX OPTIONS DEPTH OF MARKET AND/OR BX OPTIONS TOP OF MARKET NON-DISPLAY [INTERNAL]:** Permits Distributor to provide data to an unlimited number of Non-Display devices for internal use only without any Subscriber charges associated with those devices. License covers both BX Options Top of Market and BX Options Depth of Market data <br><br> Price: 2,500 USD |

# 7.  NON-DISPLAY USAGE POLICY

## OVERVIEW

Non-Display usage is any method of accessing Exchange Information other than Display Usage. Non-Display Usage is a means of accessing Nasdaq data that involves automated access or use by a machine, without access or use of a Display by a natural person or persons.

Devices [or servers] used in the transportation, dissemination, aggregation, normalization, or storage (collectively, "distribution") of data are not necessarily fee-liable, but the Distributor should be able to identify such Devices that exist within the market data infrastructure and how many Devices are used for distribution, separate and apart from Devices that are used for other purposes, as illustrated by the examples below.

Version 2.6

## NON-DISPLAY

Non-Display fees and reporting requirements vary depending upon the Nasdaq data product. Non-Display Policy and Unit of Count Policy, however, is consistent across all Nasdaq data products with respect to:

- The number of Subscribers that can modify the application in real-time; or

- The number of Devices (usually servers) that receive and benefit from the information, this includes, but is not limited to, servers or devices that run computations or creates derived data.

Distributors should have a quantifiable and auditable procedure in place to count Devices. For clarification purposes, the following categories of Devices should be reported as fee-liable unless otherwise excluded by exchange rules or policies:

- Blade server (a type of server)

- Rack server

- FPGA may not necessarily be a server, but if FPGA is run on a server that server may be fee-liable.

For the purposes of Unit of Count, Nasdaq does not include the following types of Devices to determine whether a fee is applied for Non-Display usage:

- "Cores" – Nasdaq understands that Devices may utilize multiple cores or processors to handle market data and trading. If two or more cores sit on the same physical Device, Nasdaq would require the Distributor to report one Subscriber.

- GPU, Xeon Phi cards, memory or chassis linked to a server utilizing these hardware Devices that is already counted

Examples of fee-liable Non-Display can be found at the following links:

Data News #2015 – 9 Provides clarification for Non-Display Policy, including examples of what is not fee liable for Non-Display. Additional examples of exclusions are:

- Storage of information that is not used until after the applicable delay interval

- Support of a data feed for data quality purposes, but any trading support is always fee liable

- Cloud servers used for messaging for example for moving data from a co-location facility to the cloud and vice versa

## OTHER NON DISPLAY QUESTIONS

If your firm is unsure about a specific use case, please submit your use case to your Nasdaq Sales Representative for a determination at any time. For avoidance of doubt, Non-Display is fee-liable regardless of whether the Order Management System, Execution Management System, or trading infrastructure is:

- A virtual system or located in the cloud;

- Installed locally within a datacenter;

- Enterprise; or

- Locally on an individual's desktop or Device.

If your firm utilizes Nasdaq Information in accordance with the Non-Display clarification above, please contact Nasdaq.

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

# 8. UNIT OF COUNT: SYSTEM CLASSIFICATIONS

## OVERVIEW

The Unit of Count may differ, depending upon the information received and the method of distribution. Please use the below guidelines for submitting Units of Count, Reportable Units or similar to Nasdaq. All Units of Count used by a Distributor or a Distributor's Group must be identified in the Nasdaq System Application. Nasdaq recognizes the following types of System Types or Applications.

## UNIT OF COUNT: UNCONTROLLED PRODUCTS

An Uncontrolled Product is defined by Nasdaq as any uncontrolled distribution of Nasdaq Information to Subscribers. If the Distributor cannot control both the entitlements and the display of the Information, then the system will be considered an Uncontrolled Product.

**NASDAQ CURRENTLY OFFERS THE FOLLOWING UNCONTROLLED PRODUCTS:**

- UP1. Data Feed
- UP2. Managed Data Solution [MDS]

## UNIT OF COUNT: CONTROLLED PRODUCTS

A Controlled Product is defined by Nasdaq as any controlled distribution of Nasdaq Information to Subscribers. If the Distributor controls both the entitlements and the display of the Information, then the system will be considered a Controlled Product.

**NASDAQ CURRENTLY OFFERS THE FOLLOWING CONTROLLED PRODUCTS:**

- CP1. Subscriber [Controlled Device/Access]
- CP2. Hosted Solution
- CP3: Enhanced Data Solution [EDS]

## THE UNCONTROLLED AND CONTROLLED PRODUCTS ARE DESCRIBED IN THE NEXT FEW SECTIONS

## A. UP1. DATA FEED

| Data Product | Type Offered |
|---|---|
| All Nasdaq Information | Display or Non-Display |

A Data feed is defined by Nasdaq as any uncontrolled distribution of Nasdaq Information. Any firm receiving a Data feed (Recipient) is recognized as a Distributor by Nasdaq.

Version 2.6

All Data Feeds — including internally or externally distributed, real-time or delayed, snapshot or streaming, Direct or Indirect — must be approved by Nasdaq prior to initiation of service. This approval process creates a direct relationship between the Recipient and Nasdaq. This direct relationship is essential to ensuring the correct display of the information, an effective entitlement process and a timely reporting process of the market data usage. After Distributors are granted permission to provide Data feeds, each individual Recipient of a Data feed must be approved as well. If a Distributor provides data to an unapproved Recipient or releases information prior to approval, the Distributor is responsible for paying the Recipient's fees and charges associated with this data during the unauthorized timeframe.

## B.     UP2. MANAGED DATA SOLUTION [MDS]

| Data Product | Type Offered |
|---|---|
| BX: BX TOTALVIEW | |
| NASDAQ LEVEL 2, NASDAQ OPENVIEW, NASDAQ TOTALVIEW | |
| PHLX: TOP OF PHLX OPTIONS (TOPO) | |
| PHLX: PHLX ORDERS | Non-Display ONLY |
| PSX: PSX TOTALVIEW | |
| NOM: BONO | |
| NOM: ITTO | |

### OVERVIEW

A Managed Data Solution is defined by Nasdaq as any product containing certain Nasdaq Information in which Nasdaq allows the Distributor to report a managed Data Feed under a Managed Data Solution fee schedule when the Subscriber or Recipient uses Nasdaq Information internally only, in an application, server, or similar service, and the Distributor controls the entitlements.

Distributors offering Managed Data Solutions must:

- Adhere to the Nasdaq approval policy and only authorize Recipients for Managed Data Solutions after prior approval is received from Nasdaq

- Report Managed Data Solution Recipients using the Data-Client Portal for Summary Usage Reporting

- Include Managed Data Solution Recipients under new products codes for Detailed Usage Reporting

- Offer an integrated data solution with secured data transmissions and data usage monitoring capabilities

- Offer Nasdaq depth data in its own messaging formats (rather than raw Nasdaq message formats)

- Assume the liability for any unauthorized use of Nasdaq data by Managed Data Solution Recipients

- Distributors that provide data to an unapproved Recipient or release information prior to approval are responsible for paying the Recipient's fees and charges associated with this data during the unauthorized timeframe

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

## C. CP1. SUBSCRIBER: CONTROLLED DEVICE/ACCESS/USER

| Data Product | Type Offered |
|---|---|
| All Nasdaq Information | Display |

**OVERVIEW**

A Controlled Device/Access is a type of Controlled Product that contains Nasdaq Information that is offered by a Distributor where the Distributor controls both the entitlements and the display of the Information. Nasdaq allows Distributors to report such Controlled Products to Nasdaq as Subscribers.

For Non-Display, please refer to the Non-Display Usage Policy for the Nasdaq Non-Display definition, and for direction on how to report a Subscriber that is considered Non-Display.

## D. CP2. HOSTED DISPLAY SOLUTION

| Data Product | Type Offered |
|---|---|
| Nasdaq Basic | |
| Nasdaq Last Sale | Display Only |
| Nasdaq TotalView | |

**OVERVIEW**

A Hosted Display Solution is a product, solution or capability provided by a Distributor in which the Distributor makes available Exchange Information or Derived Data to an application branded or co-branded with a third-party brand for use by external Subscribers of the third-party entity or Distributor. The Distributor maintains control of the data, entitlements and display of the product, solution or capability. The Hosted Display Solution may take a number of forms. Examples include, but not limited to:

- "Widget," such as an iframe or applet, in which the Hosted Display Solution is a part or a subset of a website or platform.

- "White Label," in which the Distributor hosts or maintains the website or platform on behalf of a third party entity.

All Hosted Solutions systems need to be pre-approved by Nasdaq. After a Distributor is granted permission to provide Hosted Solutions, each hosted solution Recipient needs to be reported in the Distributor's Detailed Report under the applicable hosted product codes. Each Hosted Solution Recipient does not need to be pre-approved. If a Distributor provides a Hosted Solution and does not report the Hosted Solution Recipients or unaffiliated organization in the detailed reporting, then the Distributor shall be liable for providing an Unauthorized Data Feed.

**PRODUCT SPECIFIC NOTE:**

**Nasdaq Basic, Last Sale, and TotalView:** Please note that a Distributor providing a hosted display solution does not owe additional external Distributor fees for each hosted solution they provide but is required to report the applicable usage for each hosted solution.

Nasdaq Basic does, however, have a separate Hosted Solution fee (but not Distributor fee) for each hosted solution; please contact your account manager for guidance.

Version 2.6

<u>Nasdaq Last Sale:</u> Distributors are to report each organization's Last Sale usage separately. Distributors providing Last Sale data in Hosted Display Solutions to unaffiliated organizations are <u>not</u> to include such usage in their cap but are to report usage separately for each unaffiliated organization receiving a Last Sale-Hosted Display Solution. Distributors are permitted to cap usage for each hosted solution organization separately.

## E.    CP3. ENHANCED DISPLAY SOLUTION [EDS]

| Data Product | Pricing | Types of EDS Offered |
|---|---|---|
| Nasdaq TotalView | EDS Pricing Applies | EDS Option 1 & 2 |
| Nasdaq OpenView | | |
| Nasdaq Level 2 | | |
| Nasdaq Basic | Regular Subscriber Rates Apply | |
| BX TotalView | | |
| PSX TotalView | | |
| BX Basic | | |
| PSX Basic | | |

### OVERVIEW

An Enhanced Display Solution ('EDS") is a type of Controlled Solution offered by a Distributor. EDS has two options as outlined below. A Distributor offering either EDS Option 1 or EDS Option 2 must meet the following criteria, in addition to the specific criteria identified for each option:

- Offer an integrated data solution with secured data transmissions, a robust entitlement system and monitor EDS Subscribers for any non-display or excessive usage by EDS Subscribers to ensure compliance.

- Offer Nasdaq data in its own messaging formats (rather than its raw Nasdaq message formats) by reformatting, redisplaying and/or altering the Nasdaq data prior to distribution, but not to affect the integrity of the Nasdaq data and not to render it inaccurate, unfair, uninformative, fictitious, misleading or discriminatory.

- Report the number of EDS Subscribers under new report titles in the online Data-Client Portal.

- Include EDS Subscribers under new product codes in Detailed Usage Reporting.

- Contractually restrict non-display usage and provide relevant language to Nasdaq during onboarding process.

- Have metrics or criteria to signal non-display or excessive usage by a Subscriber.

- Have a team or individual(s) tasked with reviewing the metrics or criteria that have been identified.

- Have a procedure to rectify such non-display or excessive usage and report it to Nasdaq.

- Assume the liability for any unauthorized use of Nasdaq data by EDS Subscribers.

Version 2.6

### EDS OPTION 1

Distributor offers Display Subscribers access to a Controlled Display Product that also includes access to the additional flexibility of an Application Programming Interface ["API"] or similar solution and the Distributor is unable to completely control the Information. Nasdaq allows Distributors to report such Enhanced Display Solutions to Nasdaq under an Enhanced Display Solution fee schedule.

- Distributors offering an EDS Option 1 must: Complete an EDS Declaration Form and Nasdaq System Application for each unique Distributor Controlled Display provided with an API or similar solution; and

- Identify the type of API or similar solution.

### EDS OPTION 2

Distributor offers Display Subscribers access to Nasdaq Information without providing Subscriber with Distributor's Controlled Display, but the Distributor still controls the entitlements.

Distributors offering such an EDS Option 2 also must complete an EDS Declaration form and a Nasdaq System Application for each unique third party display that will leverage the Distributor's Entitlement system.

The EDS Subscriber, or end user, to an Enhanced Display Solution may use the Nasdaq data for its own purposes and may not redistribute the information outside of their organization, externally, or even internally to other Subscribers in the same organization. Any EDS Subscriber distributing the information further, such as posting the Information on a shared drive or delivering the Information into another system, is prohibited under EDS. Such use would be considered a Data Feed.

## F.     UNIT OF COUNT: COUNTING GUIDELINES

### SIMULTANEOUS ACCESS

Simultaneous access by Unique User ID is prohibited, unless the Distributor is able to record, track and report the number of users able to simultaneously access Nasdaq Information. (See pricing clarifications above for additional details)

### CONTENDED ACCESS

Contended access refers to a service in which multiple Subscribers or Devices access information through a limited number of access sessions. The number of contended access sessions may be smaller than the number of Subscribers or Devices with access capability. Please note that Nasdaq does not consider a contended access session to be equivalent to a Subscriber or an Interrogation Device. In contended access situations, the Distributor must base usage reporting on the number of Subscribers, Interrogation Devices, or Users capable of accessing the Information, not the number of potential simultaneous sessions.

## 9.   NET REPORTING: NASDAQ BASIC

| Products: |
| --- |
| Nasdaq Basic – Display Professional Subscribers ONLY (Non-Display Usage is NOT included) |

Version 2.6

## PROGRAM

The Program will allow Distributors to report Nasdaq Basic Internal Professional Subscribers on a Per-User Basis per the following:

- A Subscriber that receives access to Nasdaq Basic through multiple systems provided internally by an internal Distributor will be considered one User.

- A Subscriber that receives access to Nasdaq Basic through multiple, Controlled Products delivered by one external Distributor will be considered one User.

- A Subscriber that receives access to Nasdaq Basic through one or more systems provided internally by an internal Distributor and one Controlled Product by ONE external Distributor will be considered one User.

- Subscribers that receive Nasdaq Basic from multiple, controlled products via external Distributors will be counted for each controlled product received (e.g. a Subscriber receiving products through an internal Distributor and two External Distributors will be treated as two Subscribers).

## REDISTRIBUTOR-CONTROLLED REPORTING

External Distributor-Controlled Device display usage submitted on behalf of the Distributor must continue to abide by the Nasdaq requirements. Failure of Nasdaq to receive the Distributor's detailed usage reporting from the Redistributor will be reason for Nasdaq to decline the Net Reporting request for those units.

## TERMINATION

- Nasdaq may, for any reason, terminate this Program with 90 days' notice.

- Notwithstanding anything otherwise set forth in the Nasdaq Agreements, Nasdaq may terminate this Program immediately if the Distributor undergoes or undertakes a merger, acquisition, change of ownership control, sale of substantial relevant assets, spin-off, sale, or similar transaction (collectively "Change of Control").

## AUDIT

If Nasdaq determines there is Nasdaq Basic Subscriber usage not declared via the monthly summary and detailed usage reporting, the Distributor is liable for the underreported usage of that system. Distributor will not be allowed to net underreported usage associated with an undeclared system over the audit period.

## DEFINITIONS

For the purposes of this section, a "Redistributor" is defined as the organization that provides a controlled or uncontrolled product to the Distributor. A "User" is defined as the individual end user or Person with access to the Information.

Data Feed Subscriber shall mean any Recipient outside of Distributor that (i) receives Information from the Distributor and (ii) for which the Distributor cannot substantially control the Information for the purpose of reporting usage or qualification.

Version 2.6

# 10.  ADMINISTRATION FEES

## OVERVIEW:

The below table outlines the administrative fees for each respective product. For specific pricing, see the price guide. For any questions, please contact your Account Manager.

| Product | Product Description | Administrative Fee |
|---|---|---|
| **The Nasdaq Stock Market** | Nasdaq TotalView | Nasdaq |
| | Nasdaq Level 2 | |
| | Nasdaq Basic | |
| | Nasdaq Last Sale (NLS) | |
| | NLS-Nasdaq Trades FilterView | |
| | NLS-TRF Trades FilterView | |
| | Nasdaq Net Order Imbalance Snapshot (NOIS) | |
| | NOIView FilterView | |
| | Nasdaq TotalView (Glimpse) | None |
| | Nasdaq Historical TotalView-ITCH | |
| | NLS Plus | Nasdaq+ Underlying exchanges |
| | Nasdaq MatchView | |

| Product | Product Description | Administrative Fee |
|---|---|---|
| **Nasdaq BX** | BX TotalView - ITCH | BX |
| | BX Basic | |
| | BX Last Sale | |
| | BX TotalView [GLIMPSE] | None |
| | BX Historical ITCH | |
| | BX MatchView | BX+ Underlying exchanges |
| **Nasdaq PSX** | PSX TotalView - ITCH | PSX |
| | PSX Basic | |
| | PSX Last Sale | |
| | PSX Historical ITCH | |
| | PSX Glimpse | None |
| | PSX MatchView | PSX+ Underlying exchanges |
| **Nasdaq Reference Data** | Nasdaq Daily List | Nasdaq |
| | Nasdaq Short Interest Report | |
| | Nasdaq Short Sale Volume Reports | |
| | Nasdaq Fundamental Data | |
| | Nasdaq Daily Share Volume | |
| **Nasdaq DataStore** | Nasdaq Data-On-Demand | **None** |

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| | Nasdaq Market Replay | None |
|---|---|---|
| **Nasdaq PHLX** | PHLX Depth of Market | None |
| | PHLX Orders | |
| | Top Of PHLX Options (TOPO) | |
| | Top Of PHLX Options (TOPO) Plus Orders | |
| | PHLX Options Trade Outline (PHOTO) Intraday | |
| | PHLX Options Trade Outline (PHOTO) End-of-Day | |
| | PHLX Historical PHLX Orders | |
| | PHLX PHOTO Historical | |
| **The Nasdaq Options Market** | Best of Nasdaq Options (BONO | Nasdaq |
| | Options Trade Outline (NOTO) | |
| | Options- (NOTO) Intraday | |
| | Options-NOTO End-of-Day | |
| | Options-NOTO Historical Intraday | None |
| | Options-NOTO Historical End-of-Day | |
| | Options-ITTO Glimpse | |
| **Nasdaq BX Options** | BX Options Depth of Market (BX Depth) | None |
| | BX Top of Market (BX Top) | |

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

| Product | Product Description | Administrative Fee |
|---|---|---|
| **The Nasdaq Options Market** | Best of Nasdaq Options (BONO | Nasdaq |
| | Options Trade Outline (NOTO) | |
| | Options- (NOTO) Intraday | |
| | Options-NOTO End-of-Day | |
| | Options-NOTO Historical Intraday | None |
| | Options-NOTO Historical End-of-Day | |
| | Options-ITTO Glimpse | |
| **Nasdaq BX Options** | BX Options Depth of Market (BX Depth) | None |
| | BX Top of Market (BX Top) | |
| **Nasdaq ISE** | Nasdaq ISE Depth of Market | None |
| | Nasdaq ISE Top Quote | |
| | Nasdaq ISE Order | |
| | Nasdaq ISE Spread | |
| | Nasdaq ISE Trade | |
| | Nasdaq ISEE Select XML Feed | |
| | Nasdaq ISE Open/Close Trade Profile Intraday | |
| | Nasdaq ISE Open/Close Trade Profile End-of-Day | |
| **Nasdaq GEMX** | Nasdaq GEMX Depth of Market | |

Version 2.6

| Product | Product Description | Administrative Fee |
|---------|--------------------|--------------------|
| | Nasdaq GEMX Top Quote | None |
| | Nasdaq GEMX Order | |
| | Nasdaq GEMX Trade | |
| | Nasdaq GEMX Open/Close Trade Profile Intraday | |
| | Nasdaq GEMX Open/Close Trade Profile End-of-Day | |
| **Nasdaq MRX** | Nasdaq MRX Depth of Market | None |
| | Nasdaq MRX Top Quote | |
| | Nasdaq MRX Order | |
| | Nasdaq MRX Trade | |

# 11. DOCUMENT UPDATES

## OVERVIEW

Document updates provide insight into changes of data policies. Major policy updates will be identified by a new release # (currently 2.0). Minor technical updates will be identified by version (e.g. X.1).

### January 1, 2020: Version 2.0

- Remove Nordic policy information to a separate Nordic policy document
- Add ISE, GEMX and MRX options exchanges
- Remove references to Nasdaq Futures Exchange (NFX)

### February 1, 2021: Version 2.1

- Enhanced Display Solution (EDS) clarification and guidance
- Clarification on fees for BX Options
- Updated price for U.S. Nasdaq Basic Professional [INTERNAL]

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

**June 25, 2021: Version 2.2**

- Removed Nasdaq Fixed Income (eSpeed) as it is no longer a Nasdaq offering

**February 1, 2022: Version 2.3**

- Clarified Nasdaq Options Market unit of count
- Introduction of Nasdaq Basic Digital Media License

**June 24, 2022: Version 2.4**

- Clarified Hosted Display Solution product eligibility as well as requirements
- Added requirements on creation of Best Bid Offer (BBO) data from TotalView and respective fees and documentation under Pricing Clarifications
- Added requirements on receiving Nasdaq Basic, but distributing only Nasdaq Last Sale / Nasdaq Last Sale Plus documentation under Pricing Clarifications
- Clarified definition of Nasdaq Order Imbalance Snapshot (NOIS)
- Added addition language regarding multiple security derived data

**July 28, 2022: Version 2.5**

- Updated requirements for the Nasdaq Basic Net Reporting Program
- Removal of "Nasdaq Stock Market 10" Depth Enterprise License
- Updated EDS pricing applicability for "Nasdaq Stock Market 1" Depth Enterprise License
- Addition of Professional and Non-Professional definitions and guidance

**June 1, 2024: Version 2.6**

- Removal of references of Nasdaq Online Reporting Application (NORA) as it's no longer available

US EQUITIES AND OPTIONS DATA POLICIES | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

# Exhibit 3



# DISPLAY REQUIREMENTS POLICY

## OVERVIEW

All Distributors providing market data services to External Subscribers must adhere to the associated display requirements depending on the type of data provided to promote data integrity and consistency. In addition, Distributors must not misrepresent the information.

To increase investor understanding, Nasdaq is also providing additional display recommendations as well as Nasdaq trademark guidelines. Nasdaq reserves the right to establish additional display requirements as needed. Please note that Distributors must also comply with all SEC-mandated rules regarding the display of market data.

## DISPLAY REQUIREMENTS SUMMARY TABLE REQUIREMENT

| Requirement | Data Type | Real-Time | Delayed |
|---|---|---|---|
| **Prominent Delay Message:** Distributors must display a Prominent Delay Message on all Delayed Data Products. | All Nasdaq Information with eligible Delay Intervals | | X |
| **Financial Status Indicator:** Distributors must display the Financial Status Indicator for all intraday single security quotes or trade displays. | Nasdaq Level 2, Nasdaq TotalView, Nasdaq Basic | X | X |
| **Prominent Attribution Message:** Distributors must display a Prominent Attribution Message on all Nasdaq Basic, Nasdaq Last Sale (NLS), and Nordic Last Sale data products. | Nasdaq Basic, Nasdaq Last Sale and Nordic Last Sale Information | X | X |

## PROMINENT DATA MESSAGE

Nasdaq permits Distributors to delay certain Information. Currently, if a data product is eligible for delayed pricing, and the data is delayed as per the Delayed Data Policy, there may not be a charge for the usage of the delayed data, depending upon the product selected.

For Distributors providing delayed Information, Nasdaq requires that an appropriate delay message be provided to Subscribers for all displays of Nasdaq data, including on wall boards, tickers, mobile devices and audio announcements on voice response services. The delay message must prominently appear on all displays containing Delayed Data, such as at or near the top of the page. In the case of a ticker, the delay message should be interspersed with the market data at least every 90 seconds.

Examples of appropriate delayed messages are as follows:

- "Data Delayed 15 minutes"

- "Data Delayed 24 hours"

- "Delayed Data"

- "Del-15"

- "Data Delayed until Midnight CET"

Version 2.1

## NASDAQ TRADEMARK GUIDELINES

Distributors are not entitled to use any of the Nasdaq registered trademarks for creating their own products or services. Any use of Nasdaq registered trademarks, other than for Nasdaq products as set forth in the Nasdaq Agreements, is subject to a separate trademark license agreement. Distributors must not deface, remove or misuse any Nasdaq trademarks transmitted with the Information.

## FINANCIAL STATUS INDICATOR:

Distributors providing Nasdaq U.S. Equity Information to External Subscribers that are subject to the SEC Vendor Display Rule are required to provide the Financial Status Indicator (FSI) to downstream Subscribers accessing intraday single security quotation displays or Data Feed products. The FSI is a data element that denotes when a Nasdaq-listed issuer failed to submit its regulatory filings on a timely basis, failed to meet The Nasdaq Stock Market's continuing listing standards and/or filed for bankruptcy. The FSI was added to the data products at the request of the SEC. The FSI field should be shown with the issue symbol and company name near the top of the quotation display. When the FSI value is published as "N" (Normal), Distributors are not required to display any information. Distributors are not required to provide the FSI on voice port devices or television services. If a voice port or television service offers news information, however, the Distributor may want to create a news alert based on the FSI value when the FSI for an issue is not "N" (Normal).

**PLEASE REFER TO NASDAQ DATA NEWS ITEM #2005-57 TO OBTAIN THE FSI CODE VALUES AND DESCRIPTIONS**

## PROMINENT ATTRIBUTION MESSAGE: QUOTE AND LAST SALE INFORMATION

Distributors providing Nasdaq Basic or Nasdaq Last Sale Information [Nasdaq Last Sale, NLS Plus, BX Last Sale, PSX Last Sale, and Nordic Last Sale] to External Subscribers must provide an attribution message on all displays, including wallboards, tickers, mobile devices, and audio announcements on voice response services. The message must prominently appear on all displays containing such data. In the case of a ticker, the attribution message should be interspersed with the market data at least every 90 seconds.

| Data Feed Service | Sample Attribution Message |
|---|---|
| **NASDAQ BASIC OR NASDAQ LAST SALE FOR NASDAQ-LISTEDSECURITIES** | "Real Time Nasdaq Last Sale data provided by Nasdaq" or "Source: Nasdaq Last Sale" |
| **NASDAQ BASIC OR NASDAQ LAST SALE FOR NYSE-/AMEX-LISTEDSECURITIES** | "Real Time NYSE/Amex Last Sale data provided by Nasdaq" or "Source: Nasdaq Last Sale" |
| **NORDIC LAST SALE FOR NORDIC SECURITIES** | "Real Time Nordic Last Sale data provided by Nasdaq" or "Source: Nasdaq Nordic Last Sale" or "Source: Nordic Last Sale" |

## INDUSTRY CLASSIFICATION BENCHMARK

"Industry Classification Benchmark ("ICB") is a product of FTSE International Limited ("FTSE") and all intellectual property rights in and to ICB vest in FTSE. Nasdaq has been licensed by FTSE to use ICB. "FTSE" is a trademark of London Stock Exchange and The Financial Times Limited and is used by FTSE under license. FTSE and its licensors do not accept any liability to any person for any loss or damage arising out of any error or omission in ICB."

DISPLAY REQUIREMENTS POLICY | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.

## DOCUMENT UPDATES: OVERVIEW

Document updates provide insight into changes of data policies. Major policy updates will be identified by a new release # (currently 2.0). Minor technical updates will be identified by version (e.g. X.1).

**January 1, 2020: Version 2.0**
- Nasdaq branding updated

**October 17, 2022: Version 2.1**
- Nasdaq Basic added to Prominent Attribution Message section

DISPLAY REQUIREMENTS POLICY | © Copyright 2022, Nasdaq, Inc. All Rights Reserved.